ACCEPTED
06-15-00007-CV
SIXTH COURT OF APPEALS
TEXARKANA, TEXAS
7/2/2015 9:18:06 AM
DEBBIE AUTREY
CLERK

# No. 06-15-00007-CV

In the Court of Appeals for the
Sixth Judicial District of Texas
Texarkana, Texas

FILED IN
6th COURT OF APPEALS
TEXARKANA, TEXAS
7/2/2015 9:18:06 AM
DEBBIE AUTREY
Clerk

**HYDROGEO, LLC AND FIRST BANK & TRUST EAST TEXAS**
*Appellants*
AND
**DEBERRY 3 OPERATING COMPANY, LLC,**
*Appellants*

**v.**

**QUITMAN INDEPENDENT SCHOOL DISTRICT, WOOD COUNTY, UPPER SABINE WASTE DISPOSAL DISTRICT, AND WOOD COUNTY CENTRAL HOSPITAL DISTRICT,**
*Appellees*

On Appeal from the 402nd Judicial District Court
Wood County, Texas

## BRIEF OF APPELLANTS, HYDROGEO, LLC and FIRST BANK & TRUST EAST TEXAS

J. DON WESTBROOK
Texas Bar No. 21215500
**COGHLAN CROWSON, LLP**
1127 Judson Road, Suite 211
Longview, Texas 75601
(903) 758-5543
(903) 753-6989 (fax)
dwestbrook@ccfww.com
*Attorneys for Hydrogeo, LLC and
First Bank & Trust East Texas*

ORAL ARGUMENT REQUESTED

## Certificate of Interested Persons

The undersigned counsel of record certifies that the following listed persons have an interest in the outcome of this case.

**Appellants**
Hydrogeo, LLC and
First Bank & Trust East Texas

**Counsel for Hydrogeo, LLC and First Bank & Trust East Texas**

J. Don Westbrook
Michael E. Starr
Coghlan, Crowson, LLP
1127 Judson Road, Suite 211
P.O. Box 2665
Longview, Texas 75606-2665

**Appellant**
DeBerry 3 Operating Company, LLC

**Counsel for DeBerry 3 Operating Company, LLC:**

Michael L. Dunn
Smead, Anderson & Dunn
2110 Horseshoe Lane
Longview, Texas 75606

**Appellee**
Wood County, Upper Sabine
Waste Disposal District and Wood
County Central Hospital District

**Counsel for Wood County, Upper Sabine Waste Disposal District and Wood County Central Hospital District**

Edward J. (Nick) Nicholas
Linebarger Goggan Blair &
Sampson, LLP
4828 Loop Central Drive, Suite 600
Houston, Texas 77081

Jim L. Lambeth
Alison Wylie
Linebarger Goggan Blair & Sampson, LLP
1517 W. Front St. Suite 202
Tyler, Texas 75702

**Appellee**
Quitman Independent School District

**Counsel for Quitman Independent School District**

David Hudson
Perdue, Brandon, Fielder, Collins & Mott, LLP
PO Box 2007
Tyler, Texas 75710

# TABLE OF CONTENTS

**Page**

INDEX OF AUTHORITIES ...........................................................................v, vi

STATEMENT OF THE CASE ...........................................................................vii

STATEMENT REGARDING ORAL ARGUMENT ...................................viii

ISSUES PRESENTED ..........................................................................................viii

STATEMENT OF FACTS .......................................................................................1

SUMMARY OF THE ARGUMENT .....................................................................5

ARGUMENT AND AUTHORITIES ....................................................................7

    A. Issue No. 1..................................................................................................7

    B. Issue No. 2...............................................................................................11

CONCLUSION .......................................................................................................20

PRAYER ..................................................................................................................21

CERTIFICATE OF COMPLIANCE .................................................................22

CERTIFICATE OF SERVICE............................................................................22

INDEX OF APPENDICES ...................................................................................23

# INDEX OF AUTHORITIES

**Cases**                                                                        **Page**

*Interstate Northborough P'ship v. State,* 66 S.W.3d 213
    (Tex. 2001)........................................................................................7

*Alvarado v. Farah Mfg. Co.,* 830 S.W.2d 911
    (Tex. 1992) ................................................................................7, 8, 9

*Good v. Baker,* 339, S.W.3d 260
    (Tex. App.—Texarkana 2011, pet. denied) ......................................11

*Maro v. State,* 168 S.W.2d 510
    (Tex. Civ. App.—Amarillo 1943, writ ref'd) ...................................12

*K.R.P.,* 80 S.W.3d 669
    (Tex. App.—Houston [1st Dist.] 2002, pet. denied) ..........................12

*Maximum Medical Improvement, Inc. v. County of Dallas,* 272 S.W.3d 832
    (Tex. Civ. App.—Dallas 2008, no pet.) .................................12, 13, 15

*Pete Dominguez Enterprises v. County of Dallas,* 188 S.W.3d 385
    (Tex. Civ. App.—Dallas 2006, no pet.) .............................................13

*DMV Vacuum Services, Inc. v. Zavala County Appraisal District,* 812 S.W.2d 435
    (Tex. App.—San Antonio 1991, no writ). ....................................13, 14

*Estates of Elkins v. County of Dallas,* 146 S.W.3d 826
    (Tex. App.—Dallas 2004, no pet.) .................................................14, 15

*Sonnier v. Chisholm Ryder Co.,* 909 S.W.2d 475
    (Tex. 1995) .........................................................................................18

*Logan v. Mullis,* 686 S.W.2d, 605
    (Tex. 1985) .........................................................................................18

*Palmer v. Palmer,* 831 S.W.2d 479
    (Tex. App.—Texarkana 1992, no writ) ..............................................19

*University Savings and Loan Ass'n v. Security Lumber Co.*, 423 S.W.2d 287
(Tex. 1967) .................................................................................19, 20

*Taylor v. Rigby,* 574 S.W.2d 833
(Tex. App.—1978 writ ref'd) .........................................................20

*Goldberg v. R.J. Longo Constr. Co.,* 54 F.3d 243
(5th Cir. 1995) ..............................................................................20

*Shipley v. Biscamp,* 580 S.W.2d 52
(Tex. App.—Houston [14th Dist.] 1979, no writ) .........................20

*Spencer-Sauer Lumber Co. v. Ballard,* 98 S.W.2d 1054
(Tex. App.—San Antonio 1936, no writ) .......................................20

## Other                                                        ## Page

Tex. Bus. & Com. Code Ann. §1.201(b)(9)(Vernon 1987) ...............2, 16, 17

Tex. Tax Code Ann. §33.47(a) (Vernon 1992) ...................2, 6, 11, 13, 14, 19

Tex. Tax Code Ann. § 32.03 (Vernon 1992) ...........................................2, 16

TEX. R. CIV. P. 193.6 .................................................................................3, 6, 9

TEX. R. CIV. P. 193.6 (b) .........................................................................6, 9, 10

TEX. R. CIV. P. 193.6 (a) .........................................................................8, 9, 10

TEX. R. CIV. P. 307 ........................................................................................12

Tex. Tax Code Ann. § 33.47 (Vernon 1992) .............................................12, 13

Tex. Tax Code Ann. § 33.05 (Vernon 1992) ...................................................16

Tex. Tax Code Ann. § 32.03(a) (Vernon 1992) ..............................................17

Texas Attorney General Opinion No. DM-438, May 2, 1997 ......................16

No. 06-15-00007-CV

In the
Court of Appeals for the
Sixth Judicial District of Texas
Texarkana, Texas

HYDROGEO, LLC AND FIRST BANK & TRUST EAST TEXAS
*Appellants*

AND

DEBERRY 3 OPERATING COMPANY, LLC,
*Appellants*

v.

QUITMAN INDEPENDENT SCHOOL DISTRICT, WOOD COUNTY, UPPER SABINE
WASTE DISPOSAL DISTRICT, AND WOOD COUNTY CENTRAL HOSPITAL DISTRICT,
*Appellees*

On Appeal from the 402nd Judicial District Court
Wood County, Texas

## STATEMENT OF THE CASE

Hydrogeo, LLC and First Bank & Trust East Texas, (hereinafter "Hydrogeo"),

appellants in the above captioned appeal, file this Brief of Appellants, and

respectfully request this Honorable Court of Appeals to reverse the judgment granted

in favor of Quitman Independent School District, Wood County, Upper Sabine

Waste Disposal District and Wood County Central Hospital District (hereinafter

"taxing entities") by the 402nd Judicial District Court in Wood County, Texas and render judgment that appellees take nothing by this suit.

## STATEMENT REGARDING ORAL ARGUMENT

Hydrogeo believes that oral argument will aid in the Court's decision concerning the arguments raised in this appeal.

## ISSUES PRESENTED

## ISSUE NO. 1

**Did the trial court commit reversible error by admitting Plaintiffs' Exhibit "A" into evidence when the document had not been produced prior to trial, and when the taxing entities failed to make any showing of good cause for their failure to produce the document.**

## ISSUE NO. 2

**Did the trial court err by finding the taxing entities' entire alleged tax lien enforceable against Hydrogeo, when taxing entities failed to segregate that portion of the lien which was unenforceable against Hydrogeo.**

## STATEMENT OF FACTS

This appeal is from the trial court's decision granting various taxing entities the authority to foreclose tax liens on two oil and gas leases owned and operated by Hydrogeo. Appellant First Bank & Trust East Texas owns a mortgage lien on the leases, which leases are located in Wood County, Texas.

The taxing entities originally filed suit in July 2012 naming three different owners and listing two leases i.e., the Denton White (Tract One) and the I.E. Robinson (Tract Two), claiming delinquent taxes owed for the years 2009 through 2011, and seeking foreclosure of real and personal property interests. (1 C.R. p.8)[1] At the time of the filing of the lawsuit, taxing entities, although aware of Hydrogeo's leasehold ownership, incorrectly sued three entities who did not own any interest in the Denton White lease. (2 R.R. p. 57, line 21 – p. 58, line 8.) Taxing entities did not sue anyone owning an interest in the Robinson lease for the years 2010 and 2011 (2 R.R. p. 109, line 7 – p. 110, line 18). Even a cursory search of the applicable county clerk's records or their own tax rolls would have revealed the correct owners' names. (2 R.R. p. 25 line 20 – p. 26, line 3). It was not until a year later that they filed a First Amended Petition naming Hydrogeo, LLC and First Bank & Trust East

---

[1] References to the Clerk's Record will be by Arabic numeral indicating the volume, the abbreviation "C.R." and page number. References to the Reporter's Record will be in the same manner using the abbreviation "R.R." References to the appendix will be with the abbreviation "App." and the letter of the referenced appendix tab.

1

Texas for the first time. (1 C.R. p. 36) They filed a second petition naming a 50% leasehold owner in one of the two leases, DeBerry 3 Operating Company, LLC on March 6, 2014. (1 C.R. p. 164) None of appellants received notification of taxing entities' claimed tax liens prior to filing their First Amended Petition. (2 R.R. p. 56, lines 17-19). Hydrogeo, LLC has always been current on its ad valorem taxes since the time it began operations of the two leases in 2012. (2 R.R. p. 56, lines 13-16).

As mentioned, Hydrogeo, LLC purchased the two leases in question in 2012, meaning they did not own the properties on January 1st of either 2009, 2010 or 2011, which is significant because Hydrogeo alleges they are buyers in ordinary course as defined by Tex. Bus. Com. Code §1.201 (b) (9) (Vernon 1987). (2 R.R. p. 55, line 19 – p. 56, line 5.) Hydrogeo filed verified denials and obtained response to requests for admissions confirming no ownership, lack of prior notice, and questioning the validity of the amount of the lien. (1 C.R. p. 54, 58, 78). As such, Hydrogeo contends they effectively rebutted the presumption given to taxing authorities under Tex. Tax Code Ann. §33.47(a) (Vernon 1992). Additionally, Hydrogeo as a buyer in ordinary course, believe they are protected against enforcement of the taxing authorities' tax lien as it relates to any personalty located on the two oil and gas leases. (Tex. Tax Code § 32.03, App. G).

The enforceability of the tax lien was tried as a bench trial before the court on September 18, 2014. The taxing entities offered Plaintiffs' Exhibit "A", labeled

2

"Certified Copy of Tax Records", dated August 22, 2014. (2 R.R. p. 7 line 15-20). Hydrogeo objected to the offer of Exhibit "A" for admission. (2 R.R. p. 8, line 1 – line 7). The objection dealt with the potential violation of TEX. R. CIV. P. 193.6, in that Exhibit "A" had not been provided to Hydrogeo prior to trial. (2 R.R. p. 8 line 20 – p. 9, line 1). Hydrogeo believes the trial court erred by admitting Exhibit "A" even though taxing entities made no showing of good cause or lack of unfair surprise and/or prejudice. The questionable Exhibit "A" was the only evidence offered by taxing entities, who then rested. (2 R.R. p. 9, line 10-16). Hydrogeo moved for directed verdict, which was overruled. (2 R.R. p. 19, line 15-18 and 2 R.R. p. 22, line 3).

Exhibit "A" is a seven page document regarding the two leases, and is attached as Appendix A. Page one describes a 0.83335 **royalty interest** in the Denton White lease for the year 2009. (emphasis added). (2 R.R. p. 40, line 9 – p. 41, line 9). The owners of the leases on Exhibit "A" are listed as "Black Diamond Operating Co. LLC" for year 2009 and "Rheata Resources LLC" for years 2011 and 2012. (3 C.R. p. 7-9 and App. A). The trial court subsequently ruled that Rheata Resources LLC never owned an interest in either of the two oil and gas leases for the years in question and issued a directed verdict confirming its ruling. (2 R.R. p. 109, line 7 – p. 110, line 18, and App. B). Subsequently, evidence at trial revealed the owner and operator of both leases during all three years in question was "Steelman Investments,

3

Inc." (Defendants Black Diamond and Rheata Exhibit Nos. 3 and 5). The taxing entities have never sued "Steelman Investments, Inc." for collection of the delinquent taxes.

In addition to listing the wrong owners, Plaintiffs' Exhibit "A" describes, on page one, the interest being taxed as a "royalty interest". (App. A). Page one of Exhibit "A" is taxing entities' sole evidentiary support for its claim for delinquent taxes for year 2009 regarding the Denton White lease. (2 R.R. p. 7, line 15 - 20). Subsequent testimony during trial revealed that taxing entities' claim for taxes on a royalty interest was incorrect. (2 R.R. p. 40, line 9 - p. 41, line 9). A royalty interest comes from the lessor side of an oil and gas lease, while taxing entities' intended lien is for a working interest, which comes from the lessee side. (2 R.R. p. 40, line 9, - p. 41, line 9). Despite taxing entities' Exhibit "A" listing the wrong owners and describing the wrong interest, the trial court ultimately ruled in favor of taxing entities on January 14, 2015, granting their request for foreclosure on tax liens on Hydrogeo's two leases. (App. B).

Hydrogeo requested Findings of Fact and Conclusions of Law on January 21, 2015. (App. C). The trial court issued Findings of Fact and Conclusions of Law on February 4, 2015. (App. D). Hydrogeo objected to the trial court's findings by requesting Additional Findings of Fact and Conclusions of Law on February 13, 2015, and by listing specific findings and conclusions. (App. E). The trial court

4

denied Hydrogeo's requests by re-issuing the same Findings of Fact and Conclusions of Law on February 23, 2015. (App. F). Hydrogeo filed its Notice of Appeal on January 27, 2015. (App. I).

## SUMMARY OF ARGUMENT

Hydrogeo's two leases should be free from the taxing entities' efforts to foreclose because:

1)      the one piece of evidence (App. A) was incorrectly admitted by the trial court, in that it had not been provided to opponents prior to trial and good cause was not shown by taxing entities to allow admission;

2)      even if Exhibit "A" was properly admitted, it does not prove taxing entities' claims because it lists the wrong owners, describes the wrong properties, and does not distinguish between the values given to the leases' personalty from the values given to the realty;

3)      taxing entities' reliance on its rebuttable presumption is misplaced because Hydrogeo effectively rebutted the presumption, forcing the taxing entities to prove each element of their cause of action, which they failed to do;

4)      failure by the taxing entities to prove the valid amount of the underlying tax claims is critical because without a valid debt, there can be no valid lien on which to foreclose.

5

Regarding the evidentiary question, the taxing entities offered one document (Exhibit "A") into the evidence and then rested. (2 R.R. p. 7, line 15 - p. 7, line 20); (2 R.R. p. 9, line 10 - p. 9, line 16). Exhibit "A" constitutes the entire proof offered by taxing entities. Since Exhibit "A" had not been provided to opponents prior to trial in direct violation of TEX. R. CIV. P. 193.6, the trial court had no discretion to admit Exhibit "A" unless taxing entities were able to make a showing of good cause for not complying with discovery requests. TEX. R. CIV. P. 193.6 (b). The record is silent on this issue; no showing was made by the taxing entities. There can be no doubt that since Exhibit "A" constitutes the entire proof offered by taxing entities, that the trial court's decision to improperly admit it constitutes harmful error.

Even if Exhibit "A" was properly admitted, it contains incorrect information such as listing the wrong owners, describing the wrong property and failing to distinguish between realty and personalty. (App. A).

Exhibit "A" is a certified copy of the delinquent tax rolls regarding the alleged tax lien. Under §33.47a of the Tax Code, taxing entities are entitled to a rebuttable presumption unless Hydrogeo is able to offer sufficient evidence to rebut that presumption. Hydrogeo offered verified pleadings, responses to requests for admissions, documents and testimony sufficient to rebut the taxing entities' presumption. Since the burden of going forward with evidence shifted back to them, the taxing entities were required to prove their case; they offered no additional proof.

6

The failure by the taxing entities to prove the valid amount of the underlying tax claims is critical because without a valid debt, there can be no valid lien on which to foreclose. A lien is incident to and inseparable from the debt. Since no attempt was made by the taxing entities to segregate those taxes assessed for personalty, there is no evidence of the valid amount of taxes owed. Thus, there is no evidence of a valid lien.

Since taxing entities offered less than a scintilla of admissible evidence supporting their underlying tax claim, their alleged lien is also invalid. Thus, the trial court's judgment permitting foreclosure of Hydrogeo's property was in error.

## ARGUMENT AND AUTHORITIES
## ISSUES PRESENTED
## ISSUE NO. 1

**Did the trial court commit reversible error by admitting Plaintiffs' Exhibit "A" into evidence when the document had not been timely produced prior to trial, and when taxing entities failed to show good cause for its failure to timely supplement discovery responses.**

Regarding the standard of review for the evidentiary objection presented in Issue No. 1, the trial court's decision to admit or exclude evidence is reviewed for abuse of discretion. *Interstate Northborough P'ship v. State,* 66 S.W.3d 213, 220 (Tex. 2001). However, the trial court had no discretion to admit Exhibit "A" without taxing entities making a showing of good cause. *Alvarado v. Farah Mfg. Co.,* 830

7

S.W.2d 911, 914. Since taxing entities made no effort, and there is no record of good cause being shown, the trial court committed error.

Taxing entities offered Plaintiffs' Exhibit "A" to be admitted. (2 R.R. p. 7, line 15-20). Hydrogeo objected on the grounds that the document being proffered had not been provided to Hydrogeo prior to the trial, even though a specific request for production had been made. (2 R.R. p. 8, line 1-p. 9, line 8). Specifically, in request for production No. 8, taxing entities were asked to produce, "each and every tangible piece of evidence you plan to use at the trial of this cause." (2 R.R. p. 8, line 21-23). Taxing entities acknowledged the proposed Exhibit "A" had not been provided prior to trial but argued that the proposed exhibit was an updated version of a document produced in year 2013 without offering any evidence of how Exhibit "A" differed from the earlier production. (2 R.R. p 9, line 2 – 4.)

TEX. R. CIV. P. 193.6 (a) states that "a party who fails to make, amend, or supplement a discovery response in a timely manner may not introduce in evidence the material or information that was not timely disclosed, or offer the testimony of a witness other than a named party who was not timely identified unless the court finds that: "1) there was good cause for the failure to timely make, amend or supplement the discovery response; or 2) the failure to timely make, amend or supplement the discovery response will not unfairly surprise or unfairly prejudice the other parties." (App. J).

8

The burden of proving good cause and/or a lack of unfair prejudice rests on taxing entities as the party introducing the evidence. TEX. R. CIV. P. 193.6 (b). Taxing entities failed to offer any reason why they did not timely produced the exhibit in question. (2 R.R. p. 9, line 2 – 4). The Supreme Court considered this issue in *Alvarado v. Farah Mfg. Co.,* 830 S.W.2d 911, 914 (Tex. 1992), and held that TEX. R. CIV. P. 193.6 is mandatory, and its sole sanction – exclusion of evidence – is automatic, unless there is good cause to excuse its imposition. The good cause exception permits a trial court to excuse a failure to comply with discovery in difficult or impossible circumstances. The trial court has discretion to determine whether the offering party has met his burden of showing good cause to admit the testimony; but the trial court has **no discretion** to admit testimony excluded by the rule without a showing of good cause. *Id.* (emphasis added). As the court stated, "It is both reasonable and just that a party expect that the rules he has attempted to comply with will be enforced equally against his adversary. To excuse noncompliance without a showing of good cause frustrates that expectation." *Id.* at 914.

Simply put, good cause did not exist for failing to comply with the applicable discovery rules. The trial court erred by admitting the evidence without requiring taxing entities to make a showing of good cause. The next question is whether the taxing entities proved a showing of lack of unfair surprise or unfair prejudice, TEX.

9

R. CIV. P. 193.6(a). The burden of proving lack of unfair surprise and prejudice is on taxing entities and must be supported by the record. TEX. R. CIV. P. 193.6(b). The following quote constitutes taxing entities' entire showing and is recorded at (2 R.R. p. 8, line 16-19 and p. 9, line 2-4).

> "Your Honor, we did provide them tax statements. We also gave them the calculations for taxes under the Texas Property Tax Code.
>
> The Court: So this is simply the updated tax rolls?
>
> Mr. Lambeth: Yes, your Honor."

There is no record of what tax statements, if any, were provided or what calculations if any, were ever given to Hydrogeo. In fact, taxing entities point out the proposed Exhibit "A" is not the same document which might have been provided back in 2013, and by its nature, could not have been produced back in 2013 since it is dated in 2014. (2 R.R. p. 8, line 20 – p. 9, line 1.) Since the document in question was not produced back in 2013, taxing entities' discovery responses necessarily needed to be supplemented prior to trial. Clearly it is a different document. As the record indicates, no other explanation is offered by taxing entities.

Finally, since no showing of good cause, lack of unfair surprise and/or prejudice is shown, the only remaining question for the Court of Appeals is whether the trial court's error is harmful. To obtain reversal for any error arising from an erroneous admission of evidence, Hydrogeo must show that the error probably

10

resulted in an improper judgment. *Good v. Baker*, 339 S.W.3d 260, 273 (Tex. App.—Texarkana 2011, pet. denied).

As shown in the record, the only document offered by taxing entities to support their allegations in the entire case is Exhibit "A". (2 R.R. p. 9, line 10-16.) An alleged certified copy of the tax rolls regarding the property in question allows the taxing authorities a rebuttable presumption to establish its prima facia case as to every material fact necessary to establish its cause of action. Tex. Tax Code §33.47(a). In fact, Exhibit "A" constitutes taxing entities' entire prima facia case. So if this document was improperly admitted, taxing entities produced no evidence to support any of their allegations. There can be no question therefore that the trial court's error in improperly admitting Exhibit "A" constitutes harmful error. Clearly, the trial court's judgment should be reversed and rendered.

## ISSUE NO. 2

**Did the trial court err by holding taxing entities' entire alleged tax lien enforceable against Hydrogeo, LLC, and First Bank & Trust East Texas when taxing entities failed to segregate that portion of the lien which was unenforceable against Hydrogeo.**

Regarding the standard of review, Hydrogeo objected and excepted to the findings of fact of the trial court and asked for further findings consistent with its theory of the case. Thus, the court of appeals may review the findings of the trial court and is not bound by the trial court's findings unless such are supported by the

11

evidence in the case. TEX. R. CIV. P. 307; *Maro v. State,* 168 S.W.2d 510 (Tex. Civ. App.—Amarillo 1943, writ ref'd). The trial court's conclusions of law are not binding on the court of appeals and are reviewed *de novo. In re K.R.P.,* 80 S.W.3d 669, 674 (Tex. App.—Houston [1st Dist.] 2002, pet. denied).

In a suit to collect delinquent taxes, the taxing units offering of a certified copy of delinquent tax rolls showing the property and the amount of the tax and penalties imposed and the interest accrued, constitutes prima facia evidence that each person charged with a duty relating to the imposition of the tax has complied with all requirements of law and that the amount of tax alleged to be delinquent against the property and the amount of penalties and interest due on that tax as listed are the correct amounts. Tex. Tax Code Ann. § 33.47 (Vernon 1992). This is a rebuttable presumption. *Maximum Medical Improvement, Inc. v. County of Dallas,* 272 S.W.3d 832, 836-837 (Tex. Civ. App.—Dallas 2008, no pet.). As this court held, once the presumption is rebutted, the taxing authorities are required to prove each and every element of its cause of action. *Id.*

Here, Hydrogeo filed an affirmative defense and verified denial in its First Amended Answer on August 8, 2013. (1 C.R. p. 54, 58) The only documents offered into evidence by taxing entities did not list Hydrogeo as the delinquent tax payer. Plaintiffs' Exhibit "A" (2 R.R. p. 7 line 15-19 and App. A). Additionally, Hydrogeo offered two request for admission responses in which taxing entities acknowledged

12

not providing notice to Hydrogeo prior to serving them with the amended petition. (1 C.R. p. 78). Because these facts were undisputed at trial, no presumption existed under Tex. Tax Code Ann. § 33.47 (Vernon 1992) and taxing entities were required to prove each and every element of their case. *Maximum Medical Improvement, Inc. v. County of Dallas,* 272 S.W.3d 832, 836-837 (Tex. Civ. App.—Dallas 2008, no pet.). Since the trial court did not apply the proper burden of proof, this case should be reversed and rendered.

## THE BURDEN OF PROOF IS ON THE TAXING ENTITIES

According to *Pete Dominguez Enterprises v. County of Dallas,* 188 S.W.3d 385 (Tex. Civ. App.—Dallas 2006 no pet.), the evidentiary presumption envisioned by §33.47(a) is rooted in part on the reliability of taxing authorities' processes and records. (citing *DMV Vacuum Services, Inc. v. Zavala County Appraisal District,* 812, S.W.2d 435, 437-38 (Tex. App.—San Antonio 1991, no writ). However, if the party named in the certified tax roll is incorrect, the court cannot rely on the accuracy of the tax records. *Id.* As stated by *Dominguez,* "if the identity of the entity named as owner of the property on that tax roll does not match the identity of the defendant sued for non-payment, then no presumption arises and no prima facia case is established by the taxing authority." *Id.*

While *Dominguez* is an ownership issue case, it is not the only case dealing with the sufficiency of the rebuttable presumption referenced in §33.47(a). For

13

instance, *Estates of Elkins v. County of Dallas,* 146 S.W.3d 826 (Tex. App.—Dallas 2004, no pet.), states that after the taxing authority makes its prima facia case by introducing the tax records required by Tex. Tax Code Ann. § 33.47(a) (Vernon 1992), the burden then shifts to the taxpayer to show, by introducing competent evidence, that he has paid the full amount of taxes, penalties and interest, or **that there is some other defense that applies to his case.** (Emphasis added).

In this case the defense is not misidentification of the party, but rather lack of ownership, failure to prove the amount of taxes due on the underlying debt, failure to correctly identify the interest on which the lien was claimed and lack of enforceability of the tax lien. On these issues Hydrogeo offered competent evidence rebutting the presumption set out in §33.47(a). Once that happened, taxing entities were required to establish sufficient evidence to support their alleged claims. As stated in the *Estates of Elkins* case, if the taxing authorities' evidence did, in fact, create a legal presumption, that presumption disappeared when the *Estates* offered evidence rebutting the taxing authorities' evidence. *See also DMV Vacuum Services, Inc. v. Zavala County Appraisal District* (explaining the presumption under §33.47(a)). As the *DMV* court explains, if the taxpayer offers evidence sufficient to justify a finding against a presumed fact, the presumption disappears as to that element of the taxing authorities' cause of action. The taxing authorities' evidence then has to stand on its own to prove that particular element. *Id.*

14

*The Estate of Elkins* case did not consider misidentification as the issue, but instead considered whether of the full amount of taxes, penalties and interest was due, and the court found that the evidence offered by the taxing authorities, (in effect only the certified copy of tax rolls), did not constitute more than a mere scintilla of evidence. Therefore, the court of appeals reversed and rendered judgment in favor of the appellant.

Another case, *Maximum Medical Improvement, Inc. v. County of Dallas*, 272 S.W.3d 832, (Tex. App.—Dallas 2008, no pet.) found that "when a taxing authority's prima facia case is rebutted, the presumption disappears..." As in our case, the taxpayer filed a verified denial that it was improperly sued, claiming that another entity was a proper party. Dallas County attempted, as in this case, to argue that the prima facia presumption still applies. The court of appeals disagreed, reversed the judgment and rendered a take nothing judgment on Dallas County's claims.

Hydrogeo is an oil and gas operator, and the property sought to be foreclosed on by taxing entities is two producing oil and gas leases. As it relates to ad valorem taxes, these properties are taxed in at least two different categories: 1) the leasehold estate itself, which is the oil and gas in the ground, including the legal right to operate the well; 2) the actual production equipment, such as casing, tubing, pump jacks, tanks, and surface pipelines.

According to their Second Amended Petition, at least a portion of taxing entities' judgment sought was due to taxes on Hydrogeo's personalty. (1 C.R. p. 164). Its petition states that "the value of any personal property that may be described above, and which the tax lien is sought to be enforced, is in excess of FIVE HUNDRED AND NO 100/ DOLLARS ($500.00)". Taxing entities clearly seek to foreclose on a tax lien against both personal and real property.

As stated in a 1997 Texas Attorney General Opinion, "irrespective of whether production equipment is real or personal property, it must be appraised separately from its corresponding mineral leasehold interest. Opinion No. DM-438, May 2, 1997. As the opinion also recognizes, the classification of property as real or personal is material to such matters as the statute of limitations because the statute treats real and personal property differently. Tex. Tax Code Ann. § 33.05 (Vernon 1992).

The statute of limitations is not the only issue the legislature uses to treat real and personal property differently. In our case, Hydrogeo, because of the undisputed evidence offered at trial, is exempt from having any lien foreclosed on their personalty. Tex. Tax Code Ann. § 32.03 (Vernon 1992), and Tex. Bus. & Com. Code Ann. §1.201(b)(9)(Vernon 1987). Since Hydrogeo filed a verified denial contesting ownership of the property during the applicable years in question and questioning the sufficiency of the lien on the property both real and personal, the

16

burden of proof to plead and prove all of the elements of taxing entities' claim shifted to them. They offered no evidence distinguishing between the amounts of the lien claimed for real property compared to the amount claimed for personalty. Thus, taxing entities failed, as a matter of law, to meet their burden of proof.

Tex. Tax Code Ann §32.03(a) states in part "[E]xcept as provided by Subsection (a-1), a tax lien may not be enforced against personal property transferred to a buyer in ordinary course of business as defined by §1.201(9) of the Business and Commerce Code for value who does not have actual notice of the existence of the lien." (App. G). The exception listed in Subsection a-1 applies only to manufactured homes, and has no application to our case. According to §1.201(b)(9), a "buyer in ordinary course of business" essentially means a person that buys in good faith, without knowledge that the sale violates the rights of another person. (App. H). Thus, combining the elements of §32.03(a) and §1.201(b)(9), Hydrogeo needs to show they paid value for their personalty, without notice of the lien, in an arm's length transaction, and in the normal course of business.

The undisputed evidence presented at trial is that Hydrogeo was a buyer in ordinary course of business as defined. Bill Godsey testified he had no knowledge of a previous tax lien. (2 R.R. p. 55, line 11-15). He testified Hydrogeo paid value for the leases. (2 R.R. p. 55, line 19-21). He testified Hydrogeo comported with the usual and customary practices of a buyer in the industry, in an arm's length

17

transaction. (2 R.R. p. 55, line 22-p. 56, line 5). No effort was made by taxing entities to rebut this line of testimony.

Once Hydrogeo established itself as a buyer in the ordinary course of business, the taxing entities' claim for a tax lien regarding Hydrogeo's personalty is not enforceable. (App G.). The next question is whether taxing entities segregated that portion of its unenforceable lien from the enforceable part. In order to answer this question, the trial court should have determined what portion of the taxes were assessed for the personalty, compared to that portion assessed for the realty. The personalty is that portion of the leases which is not fixed to the realty.

In determining whether oil and gas equipment is a fixture to real estate, courts consider primarily the intention of the party making the annexation. *Sonnier v. Chisholm Ryder Co.,* 909 S.W.2d 475, 479, (Tex. 1995); *Logan v. Mullis,* 686 S.W.2d, 605, 607-08 (Tex. 1985). In the trial of this case Bill Godsey, president of Hydrogeo, testified he can and will remove any and all production equipment from the two leases in question. (2 R.R., p. 62, line 10 - p. 64, line 3.) Loretta Ward, landman for Hydrogeo also testified that the equipment can and will be removed. (2 R.R. p. 26, line 7 - p. 26, line 17.) Since the testimony offers undisputed evidence regarding the intent of the owner of the equipment in question, the only decision supported by the evidence is that all of the production equipment on the two oil and gas leases is personalty. This distinction is important because Hydrogeo as a buyer

18

in ordinary course as defined in Tex. Tax Code Ann. § 32.03 (a) (Vernon 1992), is exempt from enforcement of any part of the taxing entities' alleged lien against their personalty. (*Id.*)

Because at least a portion of the lien is unenforceable, it was incumbent on taxing entities to prove at trial how much of their alleged lien was due to the personalty on the two well locations. This the taxing entities failed to do. (2 R.R. p. 88, line 7- 14.) In fact, the only testimony regarding the value of the personalty was provided by Bill Godsey, President of Hydrogeo, (2 R.R. p. 59, line 10 - p. 61, line 16, and Exhibit HB-9), showing that the value of the personalty actually exceeds the total appraised value of the leases.

Since taxing entities' lien is based on a total value of the taxes due for both realty and personalty, and because that portion of the lien for personalty is unenforceable, and since the value of the personalty exceeds the value of taxing entities' entire alleged lien, the underlying basis for the alleged lien fails as a matter of law. The taxing entities' claim of right to foreclose on Hydrogeo's two leases also fails.

Taxing entities must prove the amount of the underlying debt on the real property. A lien is an incident of, and is inseparable from, the debt. *Palmer v. Palmer*, 831 S.W.2d 479, 482, (Tex. App.—Texarkana 1992, no writ); *citing University Savings and Loan Ass'n v. Security Lumber Co.*, 423 S.W.2d 287 (Tex.

19

1967); *See also Taylor v. Rigby,* 574 S.W.2d 833, 839 (Tex. App.—1978 writ ref'd); As the court stated in *Taylor v. Rigby*: "where there is ... a debt secured by a lien, the lien is an incident of and inseparable from the debt. When one sues on the debt, the lien is thereby necessarily implicated, and both must be put in issue...". *Goldberg v. R.J. Longo Constr. Co.,* 54 F.3d 243, 246 (5th Cir. 1995); *citing Taylor v. Rigby,* 574 S.W.2d 833, 839 (Tex. App. 1978 writ ref'd).

In *Shipley v. Biscamp,* 580 S.W.2d 52, 54 (Tex. App.—Houston [14th Dist.] 1979, no writ), the plaintiff failed to prove a current debt to support a lien. The issue before the court was whether there was any debt in existence upon which foreclosure of the contractual lien could be predicated at the time of trial, since it is fundamental that without a debt there can be no lien. *Id.* The court states "that the general rule seems to be universal that a lien is but an accessory to, or mere incident of, the debt secured by it, and is discharged and extinguished, ipso facto et eo instante, by payment of the debt." *Id. citing Spencer-Sauer Lumber Co. v. Ballard,* 98 S.W.2d 1054 (Tex. App.—San Antonio 1936, no writ). The court held that it was plaintiff's burden to prove a debt in existence at the time of trial.

## CONCLUSION

As shown herein, the one piece of evidence offered by taxing entities was improperly admitted because it had not been provided to opponents prior to trial and no effort was made by taxing entities to prove good cause which would allow

20

admission. By definition, as the one document proffered by taxing entities, the trial court's error was harmful.

Even if the document was properly admitted, it does not prove the essential elements of taxing entities' claims and the rebuttable presumption relied upon by them and the trial court was misplaced. Hydrogeo effectively rebutted the presumption requiring taxing entities to offer admissible evidence to prove their cause of action. Since no evidence was offered, their claims fail.

The only document relied upon by taxing entities is fraught with misinformation, such as listing the wrong owners, listing the interest as a "royalty interest" and failing to segregate the amount of taxes assessed for personalty. Segregating the portion of the taxes assessed for personalty was essential because the amount of the tax lien for personalty was unenforceable against a buyer in the ordinary course of business, such as Hydrogeo. Taxing entities made no attempt to segregate. As such, the evidence cannot support taxing entities' desire to foreclose on the entire claimed lien on the two oil and gas leases in question. The trial court's judgment therefore should be reversed and rendered.

## PRAYER

Wherefore Premises Considered, the Court should reverse the trial court's judgment, and render judgment in favor of appellants Hydrogeo, LLC and First Bank and Trust East Texas and hold that the taxing entities take nothing against appellants.

21

Respectfully submitted,

/s/ J. Don Westbrook
J. Don Westbrook
Texas Bar No. 21215500
COGHLAN CROWSON, L.L.P.
1127 Judson Road, Ste. 211
Longview, Texas 75605
(903) 758-5543
(903) 753-6989 Facsimile
email: dwestbrook@ccfww.com
Attorneys for Appellants Hydrogeo, LLC
and First Bank & Trust East Texas

## CERTIFICATE OF COMPLIANCE

Counsel certifies that this brief contains, as counted by Microsoft Word, 5,644 words. It was typed in 14-point Times New Roman.

Dated: July 2, 2015

/s/ J. Don Westbrook
J. Don Westbrook

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Brief of Appellants has been served on all counsel of record in this appeal in accordance with the Texas Rules of Appellate Procedure on July 2, 2015.

/s/ J. Don Westbrook
J. Don Westbrook

22

## Index of Appendices

A.  Plaintiffs' Exhibit "A", Certified Copy of Tax Records, dated August 22, 2014 (7 pages).

B.  Trial court's Judgment dated January 14, 2015 (C.R. p. 199-203)

C.  Hydrogeo, LLC and First Bank & Trust East Texas' Request for Findings of Fact and Conclusions of Law, dated January 21, 2015. (C.R. p. 207 – 208).

D.  Court's Findings of Fact and Conclusions of Law, dated February 4, 2015. (C.R. p. 217 – 221).

E.  Hydrogeo, LLC and First Bank & Trust East Texas' Request for Additional Findings of Fact and Conclusions of Law, dated February 13, 2015. (C.R. p. 222 – 226).

F.  Court's Findings of Fact and Conclusions of Law, dated February 23, 2015. (C.R. p. 227 – 231).

G.  Tex. Tax Code §32.03 (a) (Vernon 1992).

H.  Tex. Bus. & Com. Code Ann. §1.201(b)(9) (Vernon 1987).

I.  Hydrogeo, LLC and First Bank & Trust East Texas' Notice of Appeal, dated January 27, 2015. (C.R. p. 204 – 205).

J.  Tex. R. Civ. P. 193.6(a) & (b).

# Appendix A

# CERTIFIED COPY OF TAX RECORDS
## FOR
## QUITMAN INDEPENDENT SCHOOL DISTRICT, WOOD COUNTY, UPPER SABINE WASTE DISPOSAL DISTRICT AND WOOD COUNTY CENTRAL HOSPITAL DISTRICT

### SUIT NO. T-3625

### QUITMAN INDEPENDENT SCHOOL DISTRICT, ET AL VS. BLACK DIAMOND OPERATING CO LLC, ET AL

| | |
|---|---|
| **THE STATE OF TEXAS** | **X** |
| **WOOD COUNTY** | **X** |

I hereby certify that the following exhibit (ensuing page(s)) is a true and correct copy of entries in the tax records of my office. The penalty and interest amounts were calculated according to Section 33.01 and 33.07 of the Texas Property Tax Code.

In testimony whereof, witness my hand and seal of office this _22nd_ day of _August_, 20_14_.

_____

Carol Taylor
Tax Assessor-Collector and Custodian of the Tax Records for: QUITMAN INDEPENDENT SCHOOL DISTRICT, WOOD COUNTY, UPPER SABINE WASTE DISPOSAL DISTRICT and WOOD COUNTY CENTRAL HOSPITAL DISTRICT

By: _____
Deputy

## EXHIBIT "A"

# Account Summary

Carol Taylor, Tax Collector
Wood County Tax Office
P.O. BOX 1919
Quitman, TX 75783
Ph: (903)763-2261   Fax: (903)763-5753

| | |
|---|---|
| Property: | 0154550-0001055-5-RI |
| Quick Ref ID: | N355851 |
| Owner: | BLACK DIAMOND OPERATING CO LLC |
| Legal Description: | 0.833335 0154550 WHITE DENTON BLACK DIAMOND OPER RI (ROYALTY INTEREST) |

BLACK DIAMOND OPERATING CO LLC
4420 VALLEY RANCH RD
LONGVIEW, TX 75602-6671

| Tax Bill (Effective Date: 09/15/2014) | | | | | Balance Due if Paid By September 30, 2014: | | | | 29,131.29 |
|---|---|---|---|---|---|---|---|---|---|
| **Bill** | | **Levy** | | | **Disc/Credi** | | | | |
| | Levy | Balance | P & I | Atty Fees | t | Date Paid | Amt Paid | Balance |
| 2009 | | | | | | | | |
| Quitman Isd | 10,679.32 | 10,305.12 | 7,082.29 | 2,664.25 | 0.00 | 09/22/2010 | 516.38 | 19,909.48 |
| Waste Disposal District | 169.36 | 163.42 | 112.33 | 42.24 | 0.00 | 09/22/2010 | 8.20 | 315.73 |
| Wood County | 4,375.23 | 4,221.93 | 2,901.57 | 1,455.37 | 0.00 | 09/22/2010 | 220.76 | 8,511.41 |
| Wood County Central | 211.70 | 204.28 | 140.39 | 52.82 | 0.00 | 09/22/2010 | 10.24 | 394.67 |
| Totals | 15,435.61 | 14,894.75 | 10,236.58 | 4,214.68 | 0.00 | | 755.58 | 29,131.29 |
| **Totals** | **15,435.61** | **14,894.75** | **10,236.58** | **4,214.68** | **0.00** | | **755.58** | **29,131.29** |

Balance Due if Paid By September 30, 2014:     29,131.29

| Pay By | Total Due |
|---|---|
| October 31, 2014 | 29,304.68 |
| November 30, 2014 | 29,478.09 |
| December 31, 2014 | 29,651.50 |

# Account Summary

Carol Taylor, Tax Collector
Wood County Tax Office
P.O. BOX 1919
Quitman, TX 75783
Ph: (903)763-2261   Fax: (903)763-5753

Property: 0154550-0715543-WI
Quick Ref ID: N357528
Owner: RHEATA RESOURCES LLC
Legal Description: 0.833335 0154550 WHITE DENTON BLACK
DIAMOND OPER WI

RHEATA RESOURCES LLC
PO BOX 921
KILGORE, TX 75663

| Tax Bill (Effective Date: 09/10/2014) | | | Balance Due if Paid By September 30, 2014: | | | | | 22,099.47 |
|---|---|---|---|---|---|---|---|---|
| Bill | Levy | Levy Balance | P & I | Atty Fees | Disc/Credit | Date Paid | Amt Paid | Balance |
| **2010** | | | | | | | | |
| Quitman Isd | 5,309.68 | 5,309.68 | 2,973.42 | 1,242.47 | 0.00 | | 0.00 | 9,525.57 |
| Waste Disposal District | 89.10 | 89.10 | 49.89 | 20.85 | 0.00 | | 0.00 | 159.84 |
| Wood County | 2,415.20 | 2,415.20 | 1,352.51 | 753.54 | 0.00 | | 0.00 | 4,521.25 |
| Wood County Central | 104.58 | 104.58 | 58.57 | 24.47 | 0.00 | | 0.00 | 187.62 |
| Totals | 7,918.56 | 7,918.56 | 4,434.39 | 2,041.33 | 0.00 | | 0.00 | 14,394.28 |
| **2011** | | | | | | | | |
| Quitman Isd | 3,070.38 | 3,070.38 | 1,350.97 | 663.20 | 0.00 | | 0.00 | 5,084.55 |
| Waste Disposal District | 53.48 | 53.48 | 23.53 | 11.55 | 0.00 | | 0.00 | 88.56 |
| Wood County | 1,405.18 | 1,405.18 | 618.28 | 404.69 | 0.00 | | 0.00 | 2,428.15 |
| Wood County Central | 62.76 | 62.76 | 27.61 | 13.56 | 0.00 | | 0.00 | 103.93 |
| Totals | 4,591.80 | 4,591.80 | 2,020.39 | 1,093.00 | 0.00 | | 0.00 | 7,705.19 |
| **Totals** | 12,510.36 | 12,510.36 | 6,454.78 | 3,134.33 | 0.00 | | 0.00 | 22,099.47 |

Balance Due if Paid By September 30, 2014:     22,099.47

| Pay By | Total Due |
|---|---|
| October 31, 2014 | 22,245.25 |
| November 30, 2014 | 22,391.03 |
| December 31, 2014 | 22,536.79 |

# Account Summary

Carol Taylor, Tax Collector
Wood County Tax Office
P.O. BOX 1919
Quitman, TX 75783
Ph: (903)763-2261   Fax: (903)763-5753

| | |
|---|---|
| Property: | 0154550-0716237-WI |
| Quick Ref ID: | N366493 |
| Owner: | HYDROGEO LLC |
| Legal Description: | 0.833335 0154550 WHITE DENTON HYDROGEO LLC WI |

HYDROGEO LLC
PO BOX 921
KILGORE, TX 75663

**Tax Bill (Effective Date: 08/22/2014)**    Balance Due if Paid By August 31, 2014:    0.00

| Bill | Levy | Levy Balance | P & I | Atty Fees | Disc/Credit | Date Paid | Amt Paid | Balance |
|---|---|---|---|---|---|---|---|---|
| **2012** | | | | | | | | |
| Quitman Isd | 473.88 | 0.00 | 0.00 | 0.00 | 0.00 | 01/03/2013 | 473.88 | 0.00 |
| Waste Disposal District | 8.12 | 0.00 | 0.00 | 0.00 | 0.00 | 01/03/2013 | 8.12 | 0.00 |
| Wood County | 213.14 | 0.00 | 0.00 | 0.00 | 0.00 | 01/03/2013 | 213.14 | 0.00 |
| Wood County Central | 8.88 | 0.00 | 0.00 | 0.00 | 0.00 | 01/03/2013 | 8.88 | 0.00 |
| Totals | 704.02 | 0.00 | 0.00 | 0.00 | 0.00 | | 704.02 | 0.00 |
| **2013** | | | | | | | | |
| Quitman Isd | 3,086.91 | 0.00 | 0.00 | 0.00 | 0.00 | 02/06/2014 | 3,086.91 | 0.00 |
| Waste Disposal District | 53.67 | 0.00 | 0.00 | 0.00 | 0.00 | 02/06/2014 | 53.67 | 0.00 |
| Wood County | 1,394.67 | 0.00 | 0.00 | 0.00 | 0.00 | 02/06/2014 | 1,394.67 | 0.00 |
| Wood County Central | 56.18 | 0.00 | 0.00 | 0.00 | 0.00 | 02/06/2014 | 56.18 | 0.00 |
| Totals | 4,591.43 | 0.00 | 0.00 | 0.00 | 0.00 | | 4,591.43 | 0.00 |
| **Totals** | **5,295.45** | **0.00** | **0.00** | **0.00** | **0.00** | | **5,295.45** | **0.00** |

Balance Due if Paid By August 31, 2014:    0.00

# Account Summary

Carol Taylor, Tax Collector
Wood County Tax Office
P.O. BOX 1919
Quitman, TX 75783
Ph: (903)763-2261  Fax: (903)763-5753

| Property: | 0133400-0713907-WI |
|---|---|
| Quick Ref ID: | N310883 |
| Owner: | BLACK DIAMOND OPERATING CO LLC |
| Legal Description: | 0.875000 0133400 ROBINSON I E BLACK DIAMOND OPER WI |

BLACK DIAMOND OPERATING CO LLC
4420 VALLEY RANCH RD
LONGVIEW, TX 75602-6671

| Tax Bill (Effective Date: 09/23/2014) | | | | | Balance Due if Paid By September 30, 2014: | | | | 9,423.15 |
|---|---|---|---|---|---|---|---|---|---|
| **Bill** | Levy | Levy Balance | P & I | Atty Fees | Disc/Credit | Date Paid | Amt Paid | Balance |
| **2007** | | | | | | | | |
| Quitman Isd | 5,187.91 | 0.00 | 933.82 | 918.26 | 0.00 | 07/22/2008 | 7,039.99 | 0.00 |
| Waste Disposal District | 77.36 | 0.00 | 18.84 | 14.41 | 0.00 | 05/21/2009 | 110.61 | 0.00 |
| Wood County | 2,138.87 | 0.00 | 520.67 | 531.91 | 0.00 | 05/21/2009 | 3,191.45 | 0.00 |
| Wood County Central | 112.40 | 0.00 | 27.35 | 20.98 | 0.00 | 05/21/2009 | 160.73 | 0.00 |
| Totals | 7,516.54 | 0.00 | 1,500.68 | 1,485.56 | 0.00 | | 10,502.78 | 0.00 |
| **2008** | | | | | | | | |
| Quitman Isd | 92.43 | 0.00 | 12.02 | 0.00 | 0.00 | 05/21/2009 | 104.45 | 0.00 |
| Waste Disposal District | 1.32 | 0.00 | 0.17 | 0.00 | 0.00 | 05/21/2009 | 1.49 | 0.00 |
| Wood County | 37.17 | 0.00 | 4.83 | 0.00 | 0.00 | 05/21/2009 | 42.00 | 0.00 |
| Wood County Central | 1.78 | 0.00 | 0.23 | 0.00 | 0.00 | 05/21/2009 | 2.01 | 0.00 |
| Totals | 132.70 | 0.00 | 17.25 | 0.00 | 0.00 | | 149.95 | 0.00 |
| **2009** | | | | | | | | |
| Quitman Isd | 3,704.18 | 3,333.42 | 2,338.38 | 906.37 | 0.00 | 09/22/2010 | 508.76 | 6,440.17 |
| Waste Disposal District | 58.74 | 52.86 | 37.07 | 14.37 | 0.00 | 09/22/2010 | 8.06 | 102.12 |
| Wood County | 1,517.57 | 1,365.67 | 958.02 | 495.12 | 0.00 | 09/22/2010 | 217.51 | 2,753.20 |
| Wood County Central | 73.43 | 66.08 | 46.35 | 17.97 | 0.00 | 09/22/2010 | 10.09 | 127.66 |
| Totals | 5,353.92 | 4,818.03 | 3,379.82 | 1,433.83 | 0.00 | | 744.42 | 9,423.15 |
| **Totals** | 13,003.16 | 4,818.03 | 4,897.75 | 2,919.39 | 0.00 | | 11,397.15 | 9,423.15 |

Balance Due if Paid By September 30, 2014:          9,423.15

| Pay By | Total Due |
|---|---|
| October 31, 2014 | 9,479.25 |
| November 30, 2014 | 9,535.33 |
| December 31, 2014 | 9,591.43 |

# Account Summary

Carol Taylor, Tax Collector
Wood County Tax Office
P.O. BOX 1919
Quitman, TX 75783
Ph: (903)763-2261   Fax: (903)763-5753

Property:          0133400-0715543-WI
Quick Ref ID:      N357525
Owner:             RHEATA RESOURCES LLC
Legal Description: 0.875000 0133400 ROBINSON I E BLACK
                   DIAMOND OPER WI

RHEATA RESOURCES LLC
PO BOX 921
KILGORE, TX 75663

| Tax Bill (Effective Date: 09/10/2014) | | | Balance Due if Paid By September 30, 2014: | | | | | 21,750.06 |
|---|---|---|---|---|---|---|---|---|
| **Bill** | Levy | Levy Balance | P & I | Atty Fees | Disc/Credit | Date Paid | Amt Paid | Balance |
| **2010** | | | | | | | | |
| Quitman Isd | 4,480.57 | 4,480.57 | 2,509.11 | 1,048.45 | 0.00 | | 0.00 | 8,038.13 |
| Waste Disposal District | 75.19 | 75.19 | 42.10 | 17.59 | 0.00 | | 0.00 | 134.88 |
| Wood County | 2,038.06 | 2,038.06 | 1,141.32 | 635.88 | 0.00 | | 0.00 | 3,815.26 |
| Wood County Central | 88.25 | 88.25 | 49.42 | 20.65 | 0.00 | | 0.00 | 158.32 |
| Totals | 6,682.07 | 6,682.07 | 3,741.95 | 1,722.57 | 0.00 | | 0.00 | 12,146.59 |
| **2011** | | | | | | | | |
| Quitman Isd | 3,826.81 | 3,826.81 | 1,683.80 | 826.59 | 0.00 | | 0.00 | 6,337.20 |
| Waste Disposal District | 66.65 | 66.65 | 29.33 | 14.40 | 0.00 | | 0.00 | 110.38 |
| Wood County | 1,751.36 | 1,751.36 | 770.60 | 504.39 | 0.00 | | 0.00 | 3,026.35 |
| Wood County Central | 78.22 | 78.22 | 34.42 | 16.90 | 0.00 | | 0.00 | 129.54 |
| Totals | 5,723.04 | 5,723.04 | 2,518.15 | 1,362.28 | 0.00 | | 0.00 | 9,603.47 |
| **Totals** | 12,405.11 | 12,405.11 | 6,260.10 | 3,084.85 | 0.00 | | 0.00 | 21,750.06 |

Balance Due if Paid By September 30, 2014:          21,750.06

| Pay By | Total Due |
|---|---|
| October 31, 2014 | 21,894.61 |
| November 30, 2014 | 22,039.17 |
| December 31, 2014 | 22,183.73 |

# Account Summary

Carol Taylor, Tax Collector
Wood County Tax Office
P.O. BOX 1919
Quitman, TX 75783
Ph: (903)763-2261   Fax: (903)763-5753

| | |
|---|---|
| Property: | 0133400-0716237-WI |
| Quick Ref ID: | N366491 |
| Owner: | HYDROGEO LLC |
| Legal Description: | 0.875000 0133400 ROBINSON I E HYDROGEO LLC WI |

HYDROGEO LLC
PO BOX 921
KILGORE, TX 75663

**Tax Bill (Effective Date: 08/22/2014)**      Balance Due if Paid By August 31, 2014:      0.00

| Bill | Levy | Levy Balance | P & I | Atty Fees | Disc/Credit | Date Paid | Amt Paid | Balance |
|---|---|---|---|---|---|---|---|---|
| **2012** | | | | | | | | |
| Quitman Isd | 1,376.69 | 0.00 | 0.00 | 0.00 | 0.00 | 01/03/2013 | 1,376.69 | 0.00 |
| Waste Disposal District | 23.58 | 0.00 | 0.00 | 0.00 | 0.00 | 01/03/2013 | 23.58 | 0.00 |
| Wood County | 619.20 | 0.00 | 0.00 | 0.00 | 0.00 | 01/03/2013 | 619.20 | 0.00 |
| Wood County Central | 25.81 | 0.00 | 0.00 | 0.00 | 0.00 | 01/03/2013 | 25.81 | 0.00 |
| Totals | 2,045.28 | 0.00 | 0.00 | 0.00 | 0.00 | | 2,045.28 | 0.00 |
| **2013** | | | | | | | | |
| Quitman Isd | 4,142.30 | 0.00 | 0.00 | 0.00 | 0.00 | 02/06/2014 | 4,142.30 | 0.00 |
| Waste Disposal District | 72.02 | 0.00 | 0.00 | 0.00 | 0.00 | 02/06/2014 | 72.02 | 0.00 |
| Wood County | 1,871.50 | 0.00 | 0.00 | 0.00 | 0.00 | 02/06/2014 | 1,871.50 | 0.00 |
| Wood County Central | 75.38 | 0.00 | 0.00 | 0.00 | 0.00 | 02/06/2014 | 75.38 | 0.00 |
| Totals | 6,161.20 | 0.00 | 0.00 | 0.00 | 0.00 | | 6,161.20 | 0.00 |
| **Totals** | 8,206.48 | 0.00 | 0.00 | 0.00 | 0.00 | | 8,206.48 | 0.00 |

Balance Due if Paid By August 31, 2014:      0.00

# Appendix B


| | |
|---|---|
| QUITMAN INDEPENDENT SCHOOL DISTRICT, ET AL | § 2015 JAN 14 A IN THE DISTRICT COURT |
| | § |
| VS. | § 402ND JUDICIAL DISTRICT |
| | § |
| BLACK DIAMOND OPERATING CO LLC, ET AL | § |
| | WOOD COUNTY, TEXAS |

## J U D G M E N T

BE IT REMEMBERED that on the **18 day of September, 2014** came on to be considered in regular order the above numbered and entitled cause wherein **QUITMAN INDEPENDENT SCHOOL DISTRICT, WOOD COUNTY, UPPER SABINE WASTE DISPOSAL DISTRICT AND WOOD COUNTY CENTRAL HOSPITAL DISTRICT** are the Plaintiffs;

and wherein the Defendants are **Black Diamond Operating Co LLC; Rheata Resources, LLC; Hydrogeo, LLC; DeBerry 3 Operating Company, LLC; and First Bank & Trust East Texas** , who were duly served with process as required by law, and who answered herein by and through his or her attorneys and were duly notified of this setting;

and Plaintiffs having moved the Court to dismiss from this suit any parties not named above, it was so ordered; and the parties submitted all matters of controversy, both of fact and of law, to the Court without the intervention of a jury, and the Court, having heard the pleadings, the evidence, and argument of counsel, is of the opinion and finds that the law and the facts are with the Plaintiffs and who are entitled to judgment as follows:

IT IS ORDERED ADJUDGED AND DECREED that Plaintiffs take nothing against Defendant **Rheata Resources LLC**, and all references to Defendants hereafter shall not include **Rheata Resources LLC.** but shall refer to all other Defendants.

IT IS THEREFORE ORDERED, ADJUDGED, and DECREED that there is due, owing, and unpaid to Plaintiffs the following amounts of delinquent taxes, accrued penalties, interest, attorney fees and costs for all delinquent years upon the following described property as set out below, together with additional penalties and interest at the rates prescribed by Subchapters A and C of Chapter 33, TEX. TAX CODE, which accrue hereafter on all of said taxes from date of judgment until paid.

## PROPERTY AND AMOUNTS OWED

Tract No. 1:
ACCT. NO. N355851 (N357528 and N366493); 0.833335 Interest in the White Denton Lease #154550, Abstract 588, the D Townsend Survey, being assessed on the tax rolls of Wood County in the name of Black Diamond Operating Co.

000199

Adjudged value: $201,090.00

| | |
|---|---|
| QUITMAN INDEPENDENT SCHOOL DISTRICT<br>Year(s) Due: 2009 - 2011 | $34,519.61 |
| WOOD COUNTY<br>Year(s) Due: 2009 - 2011 | $15,460.81 |
| UPPER SABINE WASTE DISPOSAL DISTRICT<br>Year(s) Due: 2009 - 2011 | $564.14 |
| WOOD COUNTY CENTRAL HOSPITAL DISTRICT<br>Year(s) Due: 2009 - 2011 | $686.20 |
| TOTAL: | $51,230.76 |

Tract No. 2:
ACCT. NO. N310883 (N357525 and N366491); 0.875 Working Interest in the IE Robinson Lease #133400, Abstract 588, the D Townsend Survey, being assessed on the tax rolls of Wood County in the name of Black Diamond Operating Company, Inc.


Adjudged value: $268,330.00

| | |
|---|---|
| QUITMAN INDEPENDENT SCHOOL DISTRICT<br>Year(s) Due: 2009 - 2011 | $20,815.51 |
| WOOD COUNTY<br>Year(s) Due: 2009 - 2011 | $9,594.79 |
| UPPER SABINE WASTE DISPOSAL DISTRICT<br>Year(s) Due: 2009 - 2011 | $347.40 |
| WOOD COUNTY CENTRAL HOSPITAL DISTRICT<br>Year(s) Due: 2009 - 2011 | $415.51 |
| TOTAL: | $31,173.21 |
| TOTAL DUE: | $82,403.97 |

IT IS FURTHER ORDERED, ADJUDGED, and DECREED:

That Plaintiffs also recover(s) judgment for all costs of suit and sale now or hereafter incurred, including abstractor's fees incurred in securing data and information as to the name, identity, and location of necessary parties and legal description of the above described property, in the total amount of $875.00 provided, however, that no personal money judgment is granted against any Defendant named herein unless otherwise provided below. The proceeds of any foreclosure sale in this cause shall be applied first to the payment of all accrued costs of suit and sale, and any residue shall be distributed as provided by law.

000200

That QUITMAN INDEPENDENT SCHOOL DISTRICT, WOOD COUNTY, UPPER SABINE WASTE DISPOSAL DISTRICT and WOOD COUNTY CENTRAL HOSPITAL DISTRICT recover of and from the following named Defendant, a personal money judgment in the amount of taxes, penalties, interest, attorneys fees, and costs shown above: **Black Diamond Operating Co LLC** as to Tract No. 1 for tax year 2009 only in the amount of $29,131.29 plus post judgment interest as herein provided;

That QUITMAN INDEPENDENT SCHOOL DISTRICT, WOOD COUNTY, UPPER SABINE WASTE DISPOSAL DISTRICT and WOOD COUNTY CENTRAL HOSPITAL DISTRICT recover of and from the following named Defendants, if any, an in rem judgment in the amount of taxes, penalties, interest, attorneys fees, and costs shown above: **Hydrogeo, LLC; DeBerry 3 Operating Company, LLC; and First Bank & Trust East Texas;**

That a lien exists against each of the lots, tracts, or parcels of land, for the amount of the taxes, interest, penalties, abstractor's fees and costs of court found to be due on each particular lot, tract, or parcel of land, which lien is prior and superior to all claims, right, title, interest, or liens asserted by any Defendant(s), and that Plaintiffs have foreclosure of their liens on each of the lots, tracts, or parcels of land as against the Defendant(s) or any person claiming under the Defendant(s) by any right acquired during the pendency of this suit;

That, upon the request of any Plaintiff or Intervening taxing unit, an order of sale be issued by the Clerk directed to the Constable or any Sheriff of this County, commanding such officer to seize, levy upon, and advertise the sale of each of the tracts of land, and sell them to the highest bidder for cash, all to be done as under execution except as otherwise provided by Subchapter A of Chapter 34, TEX. TAX CODE, such order to have all the force and effect of a writ of possession as between the parties to this suit and any person claiming under the defendant(s) by any right acquired pending this suit;

That such order of sale provide that the property may be sold to a taxing unit that is a party to this suit or to any other person, other than a person owning an interest in the property or any party to this suit that is not a taxing unit, for (1) the adjudged value of the property as set by this Court in the amount shown above, or (2) the aggregate amount of the judgments against the property, whichever is less;

That such order of sale also specify that the property may not be sold to a person owning an interest in the property or to a person who is a party to the suit other than a taxing unit unless: (1) that person is the highest bidder at the tax sale, and (2) the amount bid by that person is equal to or greater than the aggregate amount of the judgments against the property, including all costs of suit and sale;

That the net proceeds of any sale of such property made hereunder to any purchaser other than a taxing unit who is a party to this suit shall be applied to satisfy the judgment and liens foreclosed herein, but any excess in the proceeds of sale over the amount of judgment, the costs of suit and sale and other expenses chargeable against the property, shall be paid into the registry of the court and disbursed therefrom as provided by law;

That the owner of such property, or anyone having an interest therein, or their heirs, assigns, or legal representatives, may redeem such property in the time and manner prescribed by law;

000201

That the officer executing the order of sale shall make proper conveyance to the purchaser(s) of the land, as prescribed by law, subject to such right of redemption, and shall proceed to place the purchaser(s) of said land in possession thereof within thirty days after the day of sale; and that the clerk of this Court issue a Writ of Possession to the purchaser at the sale or to the purchaser's assigns no sooner than 20 days following the date on which the purchaser's deed from the officer making the sale is filed of record.

All relief prayed for in any of the pleadings in this cause which is not specifically granted by this judgment is hereby denied. This judgment finally disposes of all parties and all claims and is appealable.

SIGNED on the _14_ day of _January_, 2015.

_____
Judge Presiding


**APPROVED AS TO FORM:**


_____
Gregory W. Neeley
State Bar No. 14861425
Attorney for: Defendants Black Diamond
Operating Co LLC And Rheata Resources, LLC


_____
J. Don Westbrook
State Bar No. 21215500
Attorney for: Defendants Hydrogeo, LLC
And First Bank & Trust East Texas


_____
Michael L. Dunn
State Bar No. 06246900
Attorney for: Defendant DeBerry 3
Operating Company, LLC


000202

Suit No. T-3625          Page 4          Suit Key No. 2137912

Jim L. Lambeth
State Bar No. 00793047
Attorney for: Plaintiffs Quitman Independent
School District, Wood County, Upper Sabine
Waste Disposal District and Wood County
Central Hospital District

000203

# Appendix C

SUIT NO. T-3625

QUITMAN INDEPENDENT SCHOOL §        IN THE DISTRICT COURT
DISTRICT, ET AL                   §
                                  §
VS.                               §        WOOD COUNTY, TEXAS
                                  §
BLACK DIAMOND OPERATING CO        §
LLC, ET AL                  §        402ND JUDICIAL DISTRICT

## REQUEST FOR FINDINGS OF FACT AND CONCLUSIONS OF LAW

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, HYDROGEO, LLC and FIRST BANK & TRUST EAST TEXAS, Defendants in the above styled and numbered cause, and request this Court to file Findings of Fact and Conclusions of Law.

1.    The Court signed a judgment on January 14, 2015.

2.    Defendant's HYDROGEO, LLC and FIRST BANK & TRUST EAST TEXAS ask the Court to file Findings of Fact and Conclusions of Law and require the clerk to mail copies to all parties, pursuant to Rules 296 and 297 of the Texas Rules of Civil Procedure.

3.    HYDROGEO, LLC and FIRST BANK & TRUST EAST TEXAS file this request within twenty days of the date the Court signed the judgment.

000207

Respectfully submitted,

COGHLAN CROWSON, LLP
P.O. Box 2665
Longview, Texas 75606
Phone: 903-758-5543
Fax: 903-753-6989


By: _____
     J. Don Westbrook
     State Bar No. 21215500
     Sharon J. Wright
     State Bar No. 24073362

ATTORNEYS FOR DEFENDANT, HYDROGEO,
LLC and FIRST BANK & TRUST EAST TEXAS


## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the forgoing document was forwarded to Jim L. Lambeth, Linebarger Goggan Blair & Sampson, LLP, 1517 W. Front St. Suite 202, Tyler, TX 75702, Longview, Texas 75606, Gregory Neeley, 428 N. Fredonia Street, Longview, Texas 75601, and Michael L. Dunn, Smead, Anderson & Dunn, 2110 Horseshoe Lane, Longview, Texas 75606, David Hudson, Perdue, Brandon, Fielder, Collins & Mott, LLP, PO Box 2007 Tyler, Texas 75710, by facsimile this 16th day of January, 2015.


_____
J. DON WESTBROOK



000208

# Appendix D

SUIT NO. T-3625



2015 FEB -4 PM 2:29

QUITMAN INDEPENDENT SCHOOL
DISTRICT, ET AL

VS.

BLACK DIAMOND OPERATING CO
LLC, ET AL

X          IN THE DISTRICT COURT

X          402ND JUDICIAL DISTRICT

X          WOOD COUNTY, TEXAS

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

On January 14, 2015 the Court entered judgment on the above captioned cause. After considering the pleadings, the evidence, the argument and briefs from counsel, the Court, in response to request from Defendant, makes findings of fact and conclusions of law as follows:

### Findings of Fact

1. There are two properties that are the subject of this delinquent tax suit. Tract 1 is a 0.833335 Interest in the Denton White Lease #154550, Abstract 588, the D Townsend Survey, Wood County, Texas. Tract 2 is a 0.875 Working Interest in the IE Robinson Lease #133400, Abstract 588, the D Townsend Survey, Wood County, Texas. There are taxes, penalties and interest due and owing on these two properties for tax years 2009-2011 in the amount of $82,403.97 as of the date of trial.

2. Defendants Black Diamond Operating Co LLC and DeBerry 3 Operating Company, LLC were the owners as of January 1, 2009, of certain property described as a 0.833335 Interest in the Denton White Lease #154550, Abstract 588, the D Townsend Survey, recorded in Volume 2319, Page 32, official Deed Records of Wood County, which is the subject of Tract 1 tax account number N355851.

3. The appraisal roll and tax roll of Wood County names Black Diamond Operating Co LLC as the owner of a 0.833335 Interest in the Denton White Lease #154550, Abstract 588, the D Townsend Survey, which is the subject of Tract 1 tax account number N355851 for the tax year 2009.

4. Taxes, penalties and interest are due and owing on Tract 1 tax account number N355851 to Quitman Independent School District, Wood County, Upper Sabine Waste Disposal District and Wood County Central Hospital District for the tax year 2009 in the amount of $29,131.29 as of the date of trial, after all credits and offsets have been properly posted to the account.

5. Defendant DeBerry 3 Operating Company, LLC and Steelman Investments, Inc were the owners as of January 1, 2010 and January 1, 2011, of certain property described as a

000217

0.833335 Interest in the Denton White Lease #154550, Abstract 588, the D Townsend Survey, recorded in Document No. 2009-00009144, official Deed Records of Wood County, which is the subject of Tract 1 tax account number N357528.

6. The appraisal roll and tax roll of Wood County incorrectly names Rheata Resources LLC as the owner of a 0.833335 Interest in the Denton White Lease #154550, Abstract 588, the D Townsend Survey, which is the subject of Tract 1 tax account number N357528 for the tax years 2010-2011.

7. Taxes, penalties and interest are due and owing on Tract 1 tax account number N357528 to Quitman Independent School District, Wood County, Upper Sabine Waste Disposal District and Wood County Central Hospital District for the tax years 2010 and 2011 in the amount of $22,099.47 as of the date of trial, after all credits and offsets have been properly posted to the account.

8. Defendants Hydrogeo, LLC and DeBerry 3 Operating Company, LLC are the current owners as of the date of the trial of certain property described as 0.833335 Interest in the Denton White Lease #154550, Abstract 588, the D Townsend Survey, recorded in Document No. 2012-00004176, official Deed Records of Wood County, which is the subject of Tract 1's current tax account number N366493 and Tract 1's prior tax account numbers N35581 and N357528.

9. Defendant First Bank & Trust East Texas is a lienholder on certain property described as a 0.833335 Interest in the Denton White Lease #154550, Abstract 588, the D Townsend Survey, recorded in Document No. 2013-00002376, official Deed Records of Wood County, which is the subject of Tract 1's current tax account number N366493 and Tract 1's prior tax account numbers N35581 and N357528.

10. The total amount of taxes, penalties and interest that are due for Tract 1, comprised of the tax accounts N355851 and N357528, to Quitman Independent School District, Wood County, Upper Sabine Waste Disposal District and Wood County Central Hospital District for the tax years 2009-2011 is $51,230.76 as of the date of trial, after all credits and offsets have been properly posted to the accounts.

11. Steelman Investments, Inc was the owner as of January 1, 2009, of certain property described as a 0.875 Working Interest in the IE Robinson Lease #133400, Abstract 588, the D Townsend Survey, Wood County, which is the subject of Tract 2 tax account number N310883.

12. The appraisal roll and tax roll of Wood County incorrectly names Black Diamond Operating Co LLC as the owner of a 0.875 Working Interest in the IE Robinson Lease #133400, Abstract 588, the D Townsend Survey which is the subject of Tract 2 tax account number N310883 for the tax year 2009.

13. Taxes, penalties and interest are due and owing on Tract 2 tax account number N310883 to Quitman Independent School District, Wood County, Upper Sabine Waste

000218

Disposal District and Wood County Central Hospital District for the tax year 2009 in the amount of $9,423.15 as of the date of trial, after all credits and offsets have been properly posted to the account.

14. Steelman Investments, Inc was the owner as of January 1, 2010 and January 1, 2011, of certain property described as a 0.875 Working Interest in the IE Robinson Lease #133400, Abstract 588, the D Townsend Survey, Wood County, which is the subject of Tract 2 tax account number N357525.

15. The appraisal roll and tax roll of Wood County incorrectly names Rheata Resources LLC as the owner of a 0.875 Working Interest in the IE Robinson Lease #133400, Abstract 588, the D Townsend Survey, Wood County, which is the subject of Tract 2 tax account number N357525 for the tax years 2010-2011.

16. Taxes, penalties and interest are due and owing on Tract 2 tax account number N357525 to Quitman Independent School District, Wood County, Upper Sabine Waste Disposal District and Wood County Central Hospital District for the tax years 2010-2011 in the amount of $21,750.06 as of the date of trial, after all credits and offsets have been properly posted to the account.

17. Defendant Hydrogeo, LLC is the current owner as of the date of trial of certain property described as a 0.875 Working Interest in the IE Robinson Lease #133400, Abstract 588, the D Townsend Survey, recorded in Document No. 2012-00004176, official Deed Records of Wood County, which is the subject of Tract 2's current tax account number N366491 and Tract 2's prior tax account numbers N310883 and N357525.

18. Defendant First Bank & Trust East Texas is a lienholder on certain property described as a 0.875 Working Interest in the IE Robinson Lease #133400, Abstract 588, the D Townsend Survey, recorded in Document No. 2013-00002376, official Deed Records of Wood County, which is the subject of Tract 2's current tax account number N366491 and Tract 2's prior tax account numbers N310883 and N357525.

19. The total amount of taxes, penalties and interest that are due for Tract 2, comprised of the tax accounts N310883 and N357525, to Quitman Independent School District, Wood County, Upper Sabine Waste Disposal District and Wood County Central Hospital District for the tax years 2009-2011 is $31,173.21 as of the date of trial, after all credits and offsets have been properly posted to the accounts.

20. Defendant Rheata Resources LLC is not a past owner, nor a current owner, for neither Tract 1 nor Tract 2 and therefore is not liable, whether in rem or in personam, for any of the tax amounts set forth.

000219

## Conclusions of Law

1. The Court had personal jurisdiction over all parties necessary to the judgment entered herein and had jurisdiction over the subject matter before the Court.

2. Delinquent taxes, penalties and interest are due and owing on Tract 1, comprised of the tax accounts N355851 and N357528, for the tax years 2009-2011 in the amount of $51,230.76, as shown in the delinquent tax statement submitted by Quitman Independent School District, Wood County, Upper Sabine Waste Disposal District and Wood County Central Hospital District as Plaintiffs' Exhibit "A", under Chapter 33, TEX. TAX CODE

3. Delinquent taxes, penalties and interest are due and owing on Tract 2, comprised of the tax accounts N310883 and N357525, for the tax years 2009-2011 in the amount of $31,173.21, as shown in the delinquent tax statement submitted by Quitman Independent School District, Wood County, Upper Sabine Waste Disposal District and Wood County Central Hospital District as Plaintiffs' Exhibit "A", under Chapter 33, TEX. TAX CODE.

4. Quitman Independent School District, Wood County, and Wood County Central Hospital District are further entitled to additional penalties and interest for unpaid taxes on Tract 1 and Tract 2 at the rates prescribed by Subchapters A and C of Chapter 33, TEX. TAX CODE which accrues from the date of judgment until paid.

5. Plaintiffs Quitman Independent School District, Wood County, Upper Sabine Waste Disposal District and Wood County Central Hospital District shall recover of and from defendant Black Diamond Operating Co LLC, a personal money judgment as to Tract 1, account number N355851 for tax year 2009 only in the amount of $29,131.29 plus post judgment interest as provided by Subchapters A and C of Chapter 33, TEX. TAX CODE which accrues from the date of judgment until paid.

6. Plaintiffs Quitman Independent School District, Wood County, Upper Sabine Waste Disposal District and Wood County Central Hospital District shall recover of and from defendants Hydrogeo, LLC; DeBerry 3 Operating Company, LLC; and First Bank & Trust East Texas, an in rem judgment as to Tract 1, account numbers N355851 and N357528 for tax years 2009-2011 in the amount of $51,230.76 plus post judgment interest as provided by Subchapters A and C of Chapter 33, TEX. TAX CODE which accrues from the date of judgment until paid.

7. Plaintiffs Quitman Independent School District, Wood County, Upper Sabine Waste Disposal District and Wood County Central Hospital District shall recover of and from defendants Hydrogeo, LLC; DeBerry 3 Operating Company, LLC; and First Bank & Trust East Texas, an in rem judgment as to Tract 2, account numbers N310883 and N357525 for tax years 2009-2011 in the amount of $31,173.21 plus post judgment interest as provided by Subchapters A and C of Chapter 33, TEX. TAX CODE which accrues from the date of judgment until paid.

000220

8. Plaintiffs Quitman Independent School District, Wood County, Upper Sabine Waste Disposal District and Wood County Central Hospital District shall recover nothing from Defendant Rheata Resources LLC.

9. A tax lien has attached to the properties which are the subject of Tract 1 tax account numbers N355851, N357528, and N366493; and Tract 2 tax account numbers N310883, N357525, and N366491 securing payment of the amounts set forth above.

10. Quitman Independent School District, Wood County, Upper Sabine Waste Disposal District and Wood County Central Hospital District are entitled to a final judgment foreclosing the tax lien attached to the property, which is the subject of Tract 1 tax account numbers N355851, N357528, and N366493; and Tract 2 tax account numbers N310883, N357525, and N366491.

11. Costs of Suit, including Costs of Court and Abstract Fees, are assessed against Defendants Black Diamond Operating Co LLC, in personam; and Hydrogeo, LLC; DeBerry 3 Operating Company, LLC; First Bank & Trust East Texas, in rem.

12. An Order of Sale shall be issued by the Clerk upon the request of any Plaintiff or Intervening taxing unit and any sale shall be done as prescribed by Subchapter A of Chapter 34, TEX. TAX CODE.

13. All relief not granted is denied.

Signed this the ___4___ day of ___Feb.___, 2015.

_____

Judge Presiding

00221

# Appendix E

SUIT NO. T-3625

| | | |
|---|---|---|
| QUITMAN INDEPENDENT SCHOOL DISTRICT, ET AL | § § § | IN THE DISTRICT COURT |
| VS. | § § | WOOD COUNTY, TEXAS |
| BLACK DIAMOND OPERATING CO LLC, ET AL | § § § | 402ND JUDICIAL DISTRICT |

*2015 FEB 13 PM 1:42* *JENICA TURNER-CLERK DISTRICT COURT WOOD COUNTY, TEXAS* *FILED*

## REQUEST FOR ADDITIONAL FINDINGS OF FACT AND CONCLUSIONS OF LAW

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, HYDROGEO, LLC and FIRST BANK & TRUST EAST TEXAS, Defendants in the above styled and numbered cause, files this its request for the Court to make Additional Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

1.  There are two properties that are the subject of this delinquent tax suit. Tract One is a .83333 interest in the Denton White Lease No. 154550, Abstract 588, located in the D. Townsend Survey, Wood County, Texas. Taxes are owed on Tract One for the years 2009, 2010 and 2011 and are listed as follows:

| | |
|---|---|
| 2009 | $14,894.75 |
| 2010 | $7,918.56 |
| 2011 | $4,591.80 |
| TOTAL | $27,405.11 |

2.  Tract Two is a .875 interest in the I.E. Robinson Lease No. 133400, Abstract 588, located in the D. Townsend Survey, Wood County, Texas. Taxes are owed on Tract 2 for the years 2009, 2010, and 2011 and are listed as follows:

---

*Defendants, Hydrogeo, LLC and First Bank & Trust East Texas Request for Additional Findings of Fact and Conclusions of Law*                                                                 Page 1

| 2009 | $4,818.03 |
| 2010 | $6,682.07 |
| 2011 | <u>$5,723.04</u> |
| TOTAL | $17,223.14 |

3.    Total taxes owed for Tract One and Tract Two, before penalties, interest and attorney's fees are $44,628.25.

4.    Penalty and interest assessed against Tract One for the years 2009, 2010 and 2011 total $23,825.65, as of the date of the Judgment.

5.    Penalty and interest assessed against Tract Two for the years 2009, 2010 and 2011 total $13,950.07, as of the date of the Judgment.

6.    Defendants Hydrogeo, LLC and First Bank & Trust East Texas did not own or claim an interest in the Denton White Lease or the I.E. Robinson Lease during the entire years of 2009, 2010 or 2011. These Defendants acquired their interest in these properties in the year 2012.

7.    Defendants Hydrogeo, LLC and First Bank & Trust East Texas never received tax statements or delinquent tax notices on these leases, nor did Plaintiffs notify Hydrogeo, LLC or First Bank & Trust East Texas of Plaintiffs' claim for taxes owed prior to Plaintiffs' filing its First Amended Petition on July 22, 2013.

8.    The only tax statements and delinquent tax notices sent by Plaintiffs were sent to Rheata Resources, LLC, who was not an owner of the leases during the years in question. The Court entered a take nothing judgment against Rheata Resources, LLC at the conclusion of the trial.

9.    The assessed value for the Denton White Lease No. 154550 on the Wood County tax rolls is $201,090.00.

200223

10. The assessed value for the I.E. Robinson Lease No. 133400 on the Wood County tax rolls is $268,330.00.

11. The Wood County Tax Assessor assessed both real property and personalty in assessing the market value of the Denton White and the I.E. Robinson Leases.

12. Plaintiffs in their First Amended Petition, sought a judgment for delinquent taxes against both realty and personalty against Defendants in the Denton White and I.E. Robinson Leases, stating that "the value of any personal property... and against which the tax lien is sought to be enforced, is in excess of FIVE HUNDRED AND NO/100 DOLLARS ($500.00)".

13. Plaintiffs never segregated taxes owed for personalty and taxes owed against realty.

14. Court's Judgment lumps together any taxes claimed against Defendants for personalty and realty on both the Denton White and the I.E. Robinson Leases.

15. Defendants Hydrogeo and First Bank & Trust East Texas filed a verified denial stating they did not own the property made the basis of the lawsuit on the first day of January in the years of 2009, 2010 and 2011.

## CONCLUSION OF LAW

16. Defendants Hydrogeo and First Bank's affirmative defense of non-ownership is applicable in this case, under Section 42.09 of the Texas Tax Code.

17. The undisputed testimony at the trial proved that the value of the personalty for both the Denton White Lease and the I.E. Robinson Lease exceeded the assessed value of the leases.

18. Defendants rebutted the Texas Tax Code Section 33.47(a) Plaintiffs' presumption of sufficient evidence.

*Defendants, Hydrogeo, LLC and First Bank & Trust East Texas Request for Additional Findings of Fact and Conclusions of Law*                    Page 3

000224

19. Under Section 32.03 of the Texas Tax Code, a tax lien may not be enforced against personal property transferred to a buyer for value in the ordinary course of business as defined by Business and Commerce Code Section 1.201(9), if the buyer does not have actual notice of the existence of the lien.

20. Personalty, in the context of an oil and gas lease, includes all equipment and materials located above the ground, including oil and gas already produced and stored, as well as casing, wells, pumps and pipe located below the ground.

21. Defendants Hydrogeo and First Bank & Trust East Texas were buyers in the "ordinary course of business" as that term is defined by Section 1.201(9) of the Business and Commerce Code.

22. Plaintiffs' alleged tax lien may not be enforced against personalty transferred to a buyer in the ordinary course of business.

23. Because Defendants filed a proper verified denial, Plaintiffs are not entitled to the presumption of evidence under Texas Tax Code §42.09.

24. Section 33.47(a) provides a rebuttal presumption, if the identity of the entity receiving the tax notices does not match the identity of the Defendant sued for non-payment.

25. The Section 33.47(a) presumption is rebutted if Defendants allege an affirmative defense under Texas Rules of Civil Procedure 94.

26. Once the Section 33.47(a) presumption is rebutted, the burden of proof shifts to the Plaintiffs.

27. The Plaintiffs' alleged tax lien on personalty was in the amount of: $_____.

*Defendants, Hydrogeo, LLC and First Bank & Trust East Texas Request for Additional Findings of Fact and Conclusions of Law*                                                                 Page 4

000225

28. The Plaintiffs' alleged tax lien on real property was in the amount of:

$_____.

Respectfully submitted,

COGHLAN CROWSON, LLP
P.O. Box 2665
Longview, Texas 75606
Phone: 903-758-5543
Fax:    903-753-6989

By:_____
    J. Don Westbrook
    State Bar No. 21215500
    Michael E. Starr
    State Bar No. 19078400

ATTORNEYS FOR DEFENDANT, HYDROGEO,
LLC and FIRST BANK & TRUST EAST TEXAS

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the forgoing document was forwarded to all parties in accordance with the Texas Rules of Civil Procedure, by facsimile, this 13th day of February, 2015.

MICHAEL E. STARR



*Defendants, Hydrogeo, LLC and First Bank & Trust East Texas Request for Additional Findings of Fact and Conclusions of Law*                                          Page 5



000226

# Appendix F

SUIT NO. T-3625

| QUITMAN INDEPENDENT SCHOOL DISTRICT, ET AL | X | IN THE DISTRICT COURT |
|---|---|---|
| VS. | X | 402ND JUDICIAL DISTRICT |
| BLACK DIAMOND OPERATING CO LLC, ET AL | X | WOOD COUNTY, TEXAS |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

On January 14, 2015 the Court entered judgment on the above captioned cause. After considering the pleadings, the evidence, the argument and briefs from counsel, the Court, in response to request from Defendant, makes findings of fact and conclusions of law as follows:

### Findings of Fact

1. There are two properties that are the subject of this delinquent tax suit. Tract 1 is a 0.833335 Interest in the Denton White Lease #154550, Abstract 588, the D Townsend Survey, Wood County, Texas. Tract 2 is a 0.875 Working Interest in the IE Robinson Lease #133400, Abstract 588, the D Townsend Survey, Wood County, Texas. There are taxes, penalties and interest due and owing on these two properties for tax years 2009-2011 in the amount of $82,403.97 as of the date of trial.

2. Defendants Black Diamond Operating Co LLC and DeBerry 3 Operating Company, LLC were the owners as of January 1, 2009, of certain property described as a 0.833335 Interest in the Denton White Lease #154550, Abstract 588, the D Townsend Survey, recorded in Volume 2319, Page 32, official Deed Records of Wood County, which is the subject of Tract 1 tax account number N355851.

3. The appraisal roll and tax roll of Wood County names Black Diamond Operating Co LLC as the owner of a 0.833335 Interest in the Denton White Lease #154550, Abstract 588, the D Townsend Survey, which is the subject of Tract 1 tax account number N355851 for the tax year 2009.

4. Taxes, penalties and interest are due and owing on Tract 1 tax account number N355851 to Quitman Independent School District, Wood County, Upper Sabine Waste Disposal District and Wood County Central Hospital District for the tax year 2009 in the amount of $29,131.29 as of the date of trial, after all credits and offsets have been properly posted to the account.

5. Defendant DeBerry 3 Operating Company, LLC and Steelman Investments, Inc were the owners as of January 1, 2010 and January 1, 2011, of certain property described as a

000227

0.833335 Interest in the Denton White Lease #154550, Abstract 588, the D Townsend Survey, recorded in Document No. 2009-00009144, official Deed Records of Wood County, which is the subject of Tract 1 tax account number N357528.

6. The appraisal roll and tax roll of Wood County incorrectly names Rheata Resources LLC as the owner of a 0.833335 Interest in the Denton White Lease #154550, Abstract 588, the D Townsend Survey, which is the subject of Tract 1 tax account number N357528 for the tax years 2010-2011.

7. Taxes, penalties and interest are due and owing on Tract 1 tax account number N357528 to Quitman Independent School District, Wood County, Upper Sabine Waste Disposal District and Wood County Central Hospital District for the tax years 2010 and 2011 in the amount of $22,099.47 as of the date of trial, after all credits and offsets have been properly posted to the account.

8. Defendants Hydrogeo, LLC and DeBerry 3 Operating Company, LLC are the current owners as of the date of the trial of certain property described as 0.833335 Interest in the Denton White Lease #154550, Abstract 588, the D Townsend Survey, recorded in Document No. 2012-00004176, official Deed Records of Wood County, which is the subject of Tract 1's current tax account number N366493 and Tract 1's prior tax account numbers N35581 and N357528.

9. Defendant First Bank & Trust East Texas is a lienholder on certain property described as a 0.833335 Interest in the Denton White Lease #154550, Abstract 588, the D Townsend Survey, recorded in Document No. 2013-00002376, official Deed Records of Wood County, which is the subject of Tract 1's current tax account number N366493 and Tract 1's prior tax account numbers N35581 and N357528.

10. The total amount of taxes, penalties and interest that are due for Tract 1, comprised of the tax accounts N355851 and N357528, to Quitman Independent School District, Wood County, Upper Sabine Waste Disposal District and Wood County Central Hospital District for the tax years 2009-2011 is $51,230.76 as of the date of trial, after all credits and offsets have been properly posted to the accounts.

11. Steelman Investments, Inc was the owner as of January 1, 2009, of certain property described as a 0.875 Working Interest in the IE Robinson Lease #133400, Abstract 588, the D Townsend Survey, Wood County, which is the subject of Tract 2 tax account number N310883.

12. The appraisal roll and tax roll of Wood County incorrectly names Black Diamond Operating Co LLC as the owner of a 0.875 Working Interest in the IE Robinson Lease #133400, Abstract 588, the D Townsend Survey which is the subject of Tract 2 tax account number N310883 for the tax year 2009.

13. Taxes, penalties and interest are due and owing on Tract 2 tax account number N310883 to Quitman Independent School District, Wood County, Upper Sabine Waste

Disposal District and Wood County Central Hospital District for the tax year 2009 in the amount of $9,423.15 as of the date of trial, after all credits and offsets have been properly posted to the account.

14. Steelman Investments, Inc was the owner as of January 1, 2010 and January 1, 2011, of certain property described as a 0.875 Working Interest in the IE Robinson Lease #133400, Abstract 588, the D Townsend Survey, Wood County, which is the subject of Tract 2 tax account number N357525.

15. The appraisal roll and tax roll of Wood County incorrectly names Rheata Resources LLC as the owner of a 0.875 Working Interest in the IE Robinson Lease #133400, Abstract 588, the D Townsend Survey, Wood County, which is the subject of Tract 2 tax account number N357525 for the tax years 2010-2011.

16. Taxes, penalties and interest are due and owing on Tract 2 tax account number N357525 to Quitman Independent School District, Wood County, Upper Sabine Waste Disposal District and Wood County Central Hospital District for the tax years 2010-2011 in the amount of $21,750.06 as of the date of trial, after all credits and offsets have been properly posted to the account.

17. Defendant Hydrogeo, LLC is the current owner as of the date of trial of certain property described as a 0.875 Working Interest in the IE Robinson Lease #133400, Abstract 588, the D Townsend Survey, recorded in Document No. 2012-00004176, official Deed Records of Wood County, which is the subject of Tract 2's current tax account number N366491 and Tract 2's prior tax account numbers N310883 and N357525.

18. Defendant First Bank & Trust East Texas is a lienholder on certain property described as a 0.875 Working Interest in the IE Robinson Lease #133400, Abstract 588, the D Townsend Survey, recorded in Document No. 2013-00002376, official Deed Records of Wood County, which is the subject of Tract 2's current tax account number N366491 and Tract 2's prior tax account numbers N310883 and N357525.

19. The total amount of taxes, penalties and interest that are due for Tract 2, comprised of the tax accounts N310883 and N357525, to Quitman Independent School District, Wood County, Upper Sabine Waste Disposal District and Wood County Central Hospital District for the tax years 2009-2011 is $31,173.21 as of the date of trial, after all credits and offsets have been properly posted to the accounts.

20. Defendant Rheata Resources LLC is not a past owner, nor a current owner, for neither Tract 1 nor Tract 2 and therefore is not liable, whether in rem or in personam, for any of the tax amounts set forth.

000229

## Conclusions of Law

1. The Court had personal jurisdiction over all parties necessary to the judgment entered herein and had jurisdiction over the subject matter before the Court.

2. Delinquent taxes, penalties and interest are due and owing on Tract 1, comprised of the tax accounts N355851 and N357528, for the tax years 2009-2011 in the amount of $51,230.76, as shown in the delinquent tax statement submitted by Quitman Independent School District, Wood County, Upper Sabine Waste Disposal District and Wood County Central Hospital District as Plaintiffs' Exhibit "A", under Chapter 33, TEX. TAX CODE

3. Delinquent taxes, penalties and interest are due and owing on Tract 2, comprised of the tax accounts N310883 and N357525, for the tax years 2009-2011 in the amount of $31,173.21, as shown in the delinquent tax statement submitted by Quitman Independent School District, Wood County, Upper Sabine Waste Disposal District and Wood County Central Hospital District as Plaintiffs' Exhibit "A", under Chapter 33, TEX. TAX CODE.

4. Quitman Independent School District, Wood County, and Wood County Central Hospital District are further entitled to additional penalties and interest for unpaid taxes on Tract 1 and Tract 2 at the rates prescribed by Subchapters A and C of Chapter 33, TEX. TAX CODE which accrues from the date of judgment until paid.

5. Plaintiffs Quitman Independent School District, Wood County, Upper Sabine Waste Disposal District and Wood County Central Hospital District shall recover of and from defendant Black Diamond Operating Co LLC, a personal money judgment as to Tract 1, account number N355851 for tax year 2009 only in the amount of $29,131.29 plus post judgment interest as provided by Subchapters A and C of Chapter 33, TEX. TAX CODE which accrues from the date of judgment until paid.

6. Plaintiffs Quitman Independent School District, Wood County, Upper Sabine Waste Disposal District and Wood County Central Hospital District shall recover of and from defendants Hydrogeo, LLC; DeBerry 3 Operating Company, LLC; and First Bank & Trust East Texas, an in rem judgment as to Tract 1, account numbers N355851 and N357528 for tax years 2009-2011 in the amount of $51,230.76 plus post judgment interest as provided by Subchapters A and C of Chapter 33, TEX. TAX CODE which accrues from the date of judgment until paid.

7. Plaintiffs Quitman Independent School District, Wood County, Upper Sabine Waste Disposal District and Wood County Central Hospital District shall recover of and from defendants Hydrogeo, LLC; DeBerry 3 Operating Company, LLC; and First Bank & Trust East Texas, an in rem judgment as to Tract 2, account numbers N310883 and N357525 for tax years 2009-2011 in the amount of $31,173.21 plus post judgment interest as provided by Subchapters A and C of Chapter 33, TEX. TAX CODE which accrues from the date of judgment until paid.

000230

8. Plaintiffs Quitman Independent School District, Wood County, Upper Sabine Waste Disposal District and Wood County Central Hospital District shall recover nothing from Defendant Rheata Resources LLC.

9. A tax lien has attached to the properties which are the subject of Tract 1 tax account numbers N355851, N357528, and N366493; and Tract 2 tax account numbers N310883, N357525, and N366491 securing payment of the amounts set forth above.

10. Quitman Independent School District, Wood County, Upper Sabine Waste Disposal District and Wood County Central Hospital District are entitled to a final judgment foreclosing the tax lien attached to the property, which is the subject of Tract 1 tax account numbers N355851, N357528, and N366493; and Tract 2 tax account numbers N310883, N357525, and N366491.

11. Costs of Suit, including Costs of Court and Abstract Fees, are assessed against Defendants Black Diamond Operating Co LLC, in personam; and Hydrogeo, LLC; DeBerry 3 Operating Company, LLC; First Bank & Trust East Texas, in rem.

12. An Order of Sale shall be issued by the Clerk upon the request of any Plaintiff or Intervening taxing unit and any sale shall be done as prescribed by Subchapter A of Chapter 34, TEX. TAX CODE.

13. All relief not granted is denied.

Signed this the __26__ day of __Feb.__, 2015.

_____
Judge Presiding

000231

# Appendix G

Document: Tex. Tax Code § 32.03  ⊙   Actions ▾

---

‹ Previous                                                                                          Next ›

## Tex. Tax Code § 32.03

Copy Citation

This document is current through the 2015 regular session, 84th Legislature, S.B. 45, S.B. 293 (ch. 2), S.B. 415(ch. 15), S.B. 459, S.B. 529 (ch. 37), S.B. 835 (ch. 6), S.B. 901 (ch. 54), S.B. 903 (ch. 3), S.B. 1749 (ch. 29), and S.B. 1985 (ch. 4).

**Texas Statutes & Codes Annotated by LexisNexis®**   **Occupations Code**   **Title 1 Property Tax Code**   **Subtitle E Collections and Delinquency**   **Chapter 32 Tax Liens and Personal Liability**

## Sec. 32.03. Restrictions on Personal Property Tax Lien.

**(a)** Except as provided by Subsection (a-1), a tax lien may not be enforced against personal property transferred to a buyer in ordinary course of business as defined by Section 1.201(9) of the Business & Commerce Code for value who does not have actual notice of the existence of the lien.

**(a-1)** With regard to a manufactured home, a tax lien may be recorded at any time not later than six months after the end of the year for which the tax was owed. A tax lien on a manufactured home may be enforced if it has been recorded in accordance with the laws in effect at the time of the recordation of the lien. A properly recorded tax lien may not be enforced against a new manufactured home that is owned by a person who acquired the manufactured home from a retailer as a buyer in the ordinary course of business.

**(a-2)** A person may not transfer ownership of a manufactured home until all tax liens perfected on the home that have been timely filed with the Texas Department of Housing and Community Affairs have been extinguished or satisfied and released and any personal property taxes on the manufactured home which accrued on each January 1 that falls within the 18 months preceding the date of the sale have been paid. This subsection does not apply to the sale of a manufactured home in inventory.

**(b)** A bona fide purchaser for value or the holder of a lien recorded on a manufactured home statement of ownership and location is not required to pay any taxes that have not been recorded with the Texas Department of Housing and Community Affairs. In this section, manufactured home has the meaning assigned by Section 32.015(b). Unless a tax lien has been filed timely with the Texas Department of Housing and Community Affairs, no taxing unit, nor anyone acting on its behalf, may use a tax warrant or any other method to attempt to execute or foreclose on the manufactured home.

**(c)** A taxpayer may designate in writing which tax year will be credited with a particular payment. If a taxpayer pays all the amounts owing for a given year, the taxing unit shall issue a receipt for the payment of the taxes for the designated year.

**(d)** Notwithstanding any other provision of this section, if a manufactured home was omitted from the tax roll for either or both of the two preceding tax years, the taxing unit may file a tax lien within the 150-day period following the date on which the tax becomes delinquent.

**(e)** If personal property taxes on a manufactured home have not been levied by the taxing unit, the taxing unit shall provide, upon request, an estimated amount of taxes computed by multiplying the taxable value of the manufactured home, according to the most recent certified appraisal roll for the taxing unit, by the taxing unit's adopted tax rate for the preceding tax year. In order to enable the transfer of the manufactured home, the tax collector shall accept the payment of the estimated personal property taxes and issue a certification to the Texas Department of Housing and Community Affairs that the estimated taxes are being held in escrow until the taxes are levied. Once the taxes are levied, the tax collector shall apply the escrowed sums to the levied taxes. At the time the tax collector accepts the payment of the taxes, the tax collector shall provide notice that the payment of the estimated taxes is an estimate that may be raised once the appraisal rolls for the year are certified and that the new owner may be liable for the payment of any difference between the tax established by the certified appraisal roll and the estimate actually paid.

## History

Enacted by Acts 1979, 66th Leg., ch. 841 (S.B. 621), § 1, effective January 1, 1982; am. Acts 1985, 69th Leg., ch. 846 (S.B. 1267), § 16, effective September 1, 1985; am. Acts 1991, 72nd Leg., ch. 617 (S.B. 1539), § 12, effective August 26, 1991; am. Acts 1991, 72nd Leg., ch. 836 (S.B. 772), § 5.2, effective August 26, 1991; am. Acts

# Appendix H

‹ Previous          Next ›

## Tex. Bus. & Com. Code § 1.201

Copy Citation

This document is current through the 2015 regular session, 84th Legislature, S.B. 45, S.B. 293 (ch. 2), S.B. 415(ch. 15), S.B. 459, S.B. 529 (ch. 37), S.B. 835 (ch. 6), S.B. 901 (ch. 54), S.B. 903 (ch. 3), S.B. 1749 (ch. 29), and S.B. 1985 (ch. 4).

**Texas Statutes and Codes**    **BUSINESS AND COMMERCE CODE**    **TITLE 1. UNIFORM COMMERCIAL CODE**    **CHAPTER 1. GENERAL PROVISIONS**    **SUBCHAPTER B. GENERAL DEFINITIONS AND PRINCIPLES OF INTERPRETATION**

## § 1.201. General Definitions

**(a)** Unless the context otherwise requires, words or phrases defined in this section, or in the additional definitions contained in other chapters of this title that apply to

Document: Tex. Bus. & Com. Code § 1.201   ⏲   Actions ▾

**(b)** Subject to definitions contained in other chapters of this title that apply to particular chapters or parts thereof:

**(1)** "Action," in the sense of a judicial proceeding, includes recoupment, counterclaim, set-off, suit in equity, and any other proceeding in which rights are determined.

**(2)** "Aggrieved party" means a party entitled to pursue a remedy.

**(3)** "Agreement," as distinguished from "contract," means the bargain of the parties in fact, as found in their language or inferred from other circumstances, including course of performance, course of dealing, or usage of trade as provided in Section 1.303.

**(4)** "Bank" means a person engaged in the business of banking and includes a savings bank, savings and loan association, credit union, and trust company.

**(5)** "Bearer" means a person in control of a negotiable electronic document of title or a person in possession of a negotiable instrument, a negotiable tangible document of title, or a certificated security that is payable to bearer or indorsed in blank.

**(6)** "Bill of lading" means a document of title evidencing the receipt of goods for shipment issued by a person engaged in the business of directly or indirectly transporting or forwarding goods. The term does not include a warehouse receipt.

**(7)** "Branch" includes a separately incorporated foreign branch of a bank.

**(8)** "Burden of establishing" a fact means the burden of persuading the trier of fact that the existence of the fact is more probable than its nonexistence.

**(9)** "Buyer in ordinary course of business" means a person that buys goods in good faith, without knowledge that the sale violates the rights of another person in the goods, and in the ordinary course from a person, other than a pawnbroker, in the business of selling goods of that kind. A person buys goods in the ordinary course if the sale to the person comports with the usual or customary practices in the kind of business in which the seller is engaged or with the seller's own usual or customary practices. A person that sells oil, gas, or other minerals at the wellhead or minehead is a person in the business of selling goods of that kind. A buyer in ordinary course of business may buy for cash, by exchange of other property, or on secured or unsecured credit, and may acquire goods or documents of title under a preexisting contract for sale. Only a buyer that takes possession of the goods or has a right to recover the goods from the seller under Chapter 2 may be a buyer in ordinary course of business. "Buyer in ordinary course of business" does not include a person that acquires goods in a transfer in bulk or as security for or in total or partial satisfaction of a money debt.

**(10)** "Conspicuous," with reference to a term, means so written, displayed, or presented that a reasonable person against which it is to operate ought to have noticed it. Whether a term is "conspicuous" or not is a decision for the court. Conspicuous terms include the following:

**(A)** a heading in capitals equal to or greater in size than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same or lesser size; and

**(B)** language in the body of a record or display in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from surrounding text of the same size by symbols or other marks that call attention to the language.

**(11)** "Consumer" means an individual who enters into a transaction primarily for personal, family, or household purposes.

**(12)** "Contract," as distinguished from "agreement," means the total legal obligation that results from the parties' agreement as determined by this title as supplemented by any other applicable laws.

**(13)** "Creditor" includes a general creditor, a secured creditor, a lien creditor and any representative of creditors, including an assignee for the benefit of creditors, a trustee in bankruptcy, a receiver in equity and an executor or administrator of an insolvent debtor's or assignor's estate.

**(14)** "Defendant" includes a person in the position of defendant in a counterclaim, cross-claim, or third-party claim.

**(15)** "Delivery," with respect to an electronic document of title, means voluntary transfer of control, and with respect to an instrument, a tangible document of title, or chattel paper, means voluntary transfer of possession.

**(16)** "Document of title" means a record that in the regular course of business or financing is treated as adequately evidencing that the person in possession or control of the record is entitled to receive, control, hold, and dispose of the record and the goods the record covers, and purports to be issued by or addressed to a bailee and to cover goods in the bailee's possession which are either identified or are fungible portions of an identified mass. The term includes a bill of lading, transport document, dock warrant, dock receipt, warehouse receipt, and order for delivery of goods. An electronic document of title is evidenced by a record consisting of information stored in an electronic medium. A tangible document of title is evidenced by a record consisting of information that is inscribed on a tangible medium.

**(17)** "Fault" means a default, breach, or wrongful act or omission.

**(18)** "Fungible goods" means:

**(A)** goods of which any unit, by nature or usage of trade, is the equivalent of any other like unit; or

**(B)** goods that by agreement are treated as equivalent.

# Appendix I

SUIT NO. T-3625

QUITMAN INDEPENDENT SCHOOL § IN THE DISTRICT COURT
DISTRICT, ET AL §
§
VS. § WOOD COUNTY, TEXAS
§
BLACK DIAMOND OPERATING CO §
LLC, ET AL § 402ND JUDICIAL DISTRICT

## NOTICE OF APPEAL

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW HYDROGEO, LLC and FIRST BANK & TRUST EAST TEXAS, two of the Defendants in the above captioned cause, and gives notice of intent to appeal from the Judgment rendered in this cause on January 14, 2015, and files this Notice of Appeal from that Judgment to the Court of Appeals for the Sixth Court of Appeals District of Texas.

1. HYDROGEO, LLC and FIRST BANK & TRUST EAST TEXAS are appealing from Cause No. T-3625; *Quitman Independent School District et al vs. Black Diamond Operating Co. LLC, et al*; In the District Court 402nd District, Wood County, Texas.

2. HYDROGEO, LLC and FIRST BANK & TRUST EAST TEXAS appeal from this Court's Final Judgment of January 14, 2015.

3. This appeal is taken to the Sixth Court of Appeals in Texarkana, Texas.

Dated January 16, 2015.

---

*Defendants, Hydrogeo, LLC and First Bank & Trust East Texas Notice of Appeal*     Page 1

000204

Respectfully submitted,

COGHLAN CROWSON, LLP
P.O. Box 2665
Longview, Texas 75606
Phone: 903-758-5543
Fax:    903-753-6989

By: _J. Don Westbrook_____
     J. Don Westbrook
     State Bar No. 21215500
     Sharon J. Wright
     State Bar No. 24073362

ATTORNEYS FOR DEFENDANT, HYDROGEO,
LLC and FIRST BANK & TRUST EAST TEXAS

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the forgoing document was forwarded to Jim L. Lambeth, Linebarger Goggan Blair & Sampson, LLP, 1517 W. Front St. Suite 202, Tyler, TX 75702, Longview, Texas 75606, Gregory Neeley, 428 N. Fredonia Street, Longview, Texas 75601, and Michael L. Dunn, Smead, Anderson & Dunn, 2110 Horseshoe Lane, Longview, Texas 75606, David Hudson, Perdue, Brandon, Fielder, Collins & Mott, LLP, PO Box 2007 Tyler, Texas 75710 by facsimile this 16th day of January, 2015.

                              J. Don Westbrook
                              J. DON WESTBROOK

Appendix J



supplemental response must be in the same form as the initial response and must be verified by the party if the original response was required to be verified by the party, but the failure to comply with this requirement does not make the amended or supplemental response untimely unless the party making the response refuses to correct the defect within a reasonable time after it is pointed out.

**193.6 Failing to Timely Respond—Effect on Trial.**

**(a) *Exclusion of evidence and exceptions.*** A party who fails to make, amend, or supplement a discovery response in a timely manner may not introduce in evidence the material or information that was not timely disclosed, or offer the testimony of a witness (other than a named party) who was not timely identified, unless the court finds that:

(1) there was good cause for the failure to timely make, amend, or supplement the discovery response; or

(2) the failure to timely make, amend, or supplement the discovery response will not unfairly surprise or unfairly prejudice the other parties.

**(b) *Burden of establishing exception.*** The burden of establishing good cause or the lack of unfair surprise or unfair prejudice is on the party seeking to introduce the evidence or call the witness. A finding of good cause or of the lack of unfair surprise or unfair prejudice must be supported by the record.

**(c) *Continuance.*** Even if the party seeking to introduce the evidence or call the witness fails to carry the burden under paragraph (b), the court may grant a continuance or temporarily postpone the trial to allow a response to be made, amended, or supplemented, and to allow opposing parties to conduct discovery regarding any new information presented by that response.

**193.7 Production of Documents Self-Authenticating.** A party's production of a document in response to written discovery authenticates the document for use against that party in any pretrial proceeding or at trial unless—within ten days or a longer or shorter time ordered by the court, after the producing party has actual notice that the document will be used—the party objects to the authenticity of the document, or any part of it, stating the specific basis for objection. An objection must be either on the record or in writing and must have a good faith factual and legal basis. An objection made to the authenticity of only part of a document

does not affect the authenticity of the remainder. If objection is made, the party attempting to use the document should be given a reasonable opportunity to establish its authenticity.

Comments to 1999 change:

1. This rule imposes a duty upon parties to make a complete response to written discovery based upon all information reasonably available, subject to objections and privileges.

2. An objection to written discovery does not excuse the responding party from complying with the request to the extent no objection is made. But a party may object to a request for "all documents relevant to the lawsuit" as overly broad and not in compliance with the rule requiring specific requests for documents and refuse to comply with it entirely. See *Loftin v. Martin*, 776 S.W.2d 145 (Tex.1989). A party may also object to a request for a litigation file on the ground that it is overly broad and may assert that on its face the request seeks only materials protected by privilege. See *National Union Fire Ins. Co. v. Valdez*, 863 S.W.2d 458 (Tex.1993). A party who objects to production of documents from a remote time period should produce documents from a more recent period unless that production would be burdensome and duplicative should the objection be overruled.

3. This rule governs the presentation of all privileges including work product. It dispenses with objections to written discovery requests on the basis that responsive information or materials are protected by a specific privilege from discovery. Instead, the rule requires parties to state that information or materials have been withheld and to identify the privilege upon which the party relies. The statement should not be made prophylactically, but only when specific information and materials have been withheld. The party must amend or supplement the statement if additional privileged information or material is found subsequent to the initial response. Thus, when large numbers of documents are being produced, a party may amend the initial response when documents are found as to which the party claims privilege. A party need not state that material created by or for lawyers for the litigation has been withheld as it can be assumed that such material will be withheld from virtually any request on the grounds of attorney-client privilege or work product. However, the rule does not prohibit a party from specifically requesting the material or information if the party has a good faith basis for asserting that it is discoverable. An example would be material or information described by Rule 503(d)(1) of the Rules of Evidence.

4. Rule 193.3(d) is a new provision that allows a party to assert a claim of privilege to material or information produced inadvertently without intending to waive the privilege. The provision is commonly used in complex cases to reduce costs and risks in large document productions. The focus is on the intent to waive the privilege, not the intent to produce the material or information. A party who fails to diligently screen documents before producing them does not waive a claim of privilege. This rule is thus broader than TRE 511 and overrules *Granada Corp. v. First Court of Appeals*, 844 S.W.2d 223 (Tex.1992), to the extent the two conflict. The ten-day period (which may be shortened by the court) allowed for an amended response does not run from the production of the material or information but from the party's first awareness of the mistake. To avoid complications at trial, a party may identify prior to trial the documents intended to be offered, thereby triggering the obligation to assert any overlooked privilege under this rule. A trial court may also order this procedure.

5. This rule imposes no duty to supplement or amend deposition testimony. The only duty to supplement deposition testimony is provided in 195.6.

6. Any party can request a hearing in which the court will resolve issues brought up in objections or withholding statements. The party seeking to avoid discovery has the burden of proving the objection or privilege.

7. The self-authenticating provision is new. Authentication is, of course, but a condition precedent to admissibility and does not establish admissibility. See TRE 901(a). The ten-day period allowed for objection to authenticity (which period may be altered by the court in appropriate circumstances) does not run from the production of the material or information but from the party's actual awareness that the document will be used. To avoid complications at trial, a party may identify prior to trial the documents intended to be offered, thereby triggering the obligation to object to authenticity. A trial court may also order this procedure. An objection to authenticity must be made in good faith.